Filed 3/13/17; on rehearing

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E067296 |
| v. | (Super.Ct.No. RIF1601012) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| PABLO ULLISSES LARA, JR., | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of mandate/prohibition. Richard T. Fields, Judge. Petition denied.

Michael A. Hestrin, District Attorney, Donald W. Ostertag, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

1

Steven S. Mitchell; Steven L. Harmon, Public Defender, Laura Arnold, Deputy Public Defender, for Real Party in Interest.

Having read and considered the petition, the informal response we requested, and additional briefing as described below, as well as the record provided by both parties, we conclude the petition lacks merit. Our order requesting an informal response notified the parties that "[t]he court may issue a peremptory writ in the first instance, or the court may deny the petition by a written opinion on the merits that determines a cause and constitutes law of the case." All parties received "due notice" (Code Civ. Proc., § 1088), and "it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the petition." (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 (*Palma*).) In reliance on these rules, and because we agree that the issue posed by the petition is an important one warranting speedy resolution, we now resolve the petition by way of a formal written opinion denying relief.

At the outset, we pause to explain the procedure we have utilized on this petition. We emphasize that we do not take this approach lightly, nor do we mean to imply an intention on our part to adopt this procedure as our routine practice. (See, e.g., *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1223 [urging courts not to allow the expedited *Palma* procedure to become routine], disapproved on other grounds as stated in *Hassan v.*

*Mercy American River Hospital* (2003) 31 Cal.4th 709, 724; *Ng v. Superior Court* (1992) 4 Cal.4th 29, 34-35 (*Ng*) [same].)  We acted as we did because this petition was particularly exigent, as explained *post*.

On November 8, 2016, the voters passed Proposition 57.[1]  As relevant to this petition, Proposition 57 eliminated the People's ability to directly file charges against a juvenile offender in adult court and instead authorized the People to file "a motion to transfer the minor from juvenile court to a court of criminal jurisdiction."  (Welf. & Inst. Code, § 707, subd. (a)(1).)  Upon receiving such a motion, the juvenile court is to decide whether the minor should be transferred to adult court[2] based on statutorily-prescribed criteria.  (Welf. & Inst. Code, § 707, subd. (a)(2).)

Prior to the passage of Proposition 57, the People directly filed a complaint against real party in interest, a minor, in adult court under the authority of former section 707, subdivision (d)(2), of the Welfare and Institutions Code.  A preliminary hearing occurred on May 26, 2016.  On June 10, 2016, the People filed an information charging real party

---

[1]  This enactment is also known as The Public Safety and Rehabilitation Act of 2016.  For ease of reference, we shall refer to it as "Proposition 57" in this opinion.  Moreover, when we use the term Proposition 57 in the course of this opinion, we refer, unless otherwise specified, only to those portions of the enactment that are relevant to this petition, namely, the portions of Proposition 57 that eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in the juvenile court.

[2]  The statutory phrase is "a court of criminal jurisdiction."  (See, e.g., Welf. & Inst. Code, § 707, subd. (a).)  As do the People and as did the voter pamphlet supporting Proposition 57, we tend to use the vernacular, *adult court*.  We do this for ease of reference and mean no disrespect.

in interest with felony violations of Penal Code sections 209, subdivision (b)(1), 286, subdivision (c)(2)(B), and 288a, subdivision (c)(2)(B).

On November 16, 2016, real party in interest filed a motion requesting "a fitness hearing in juvenile court pursuant to recently enacted legislation via Proposition 57." After considering written opposition from the People, who argued Proposition 57 could not be applied to real party in interest's case retroactively, the trial court granted the motion on November 29, 2016. Noting that the issue was "novel," the trial court stayed its order until December 20, 2016, so the People could seek appellate intervention.

The People's petition in this case followed three days later on December 2, 2016. It sought an emergency stay and asserted there would be "widespread confusion and continued litigation" if the trial court's order in this case stood. In addition, the petition introduced evidence that there were 57 other direct-file cases pending, and that 10 motions to transfer to juvenile court had already been received. On December 16, 2016, we requested an informal response, which we received on December 20, 2016. Petitioner filed a reply on December 29, 2016.

On December 6, 2016, the People filed *People v. Superior Court* (*Sanchez*) (case No. E067311) in this court. They raised the same issue raised in this petition, and, as they did in the petition in this case, requested an emergency stay. The petition asserted there were "widespread confusion, continued litigation, and jurisdictional and procedural uncertainties attendant with the trial court's order." On December 9, 2016, the People filed a separate motion for stay in *Sanchez*. That same day, we issued an order denying

4

the request for stay but indicating we would resolve the merits of the petition by separate order. On December 16, 2016, we issued another order, this time that the *Sanchez* petition would be considered with the petition in this case, since they both raised identical issues. We also requested an informal response from the real party in interest in *Sanchez*. That response was filed on December 20, 2016; a reply followed on December 29, 2016.

On December 7, 2016, the People filed *People v. Superior Court* (*Mayer*) (case No. E067326), which raised the same issues as this petition and *Sanchez*. The *Mayer* petition also requested an emergency stay, which we denied the following day. As we did in *Sanchez*, we indicated we would separately resolve the merits of the petition. On December 16, 2016, we ordered *Mayer* considered with this petition and requested an informal response. As in *Sanchez*, the response and reply were filed on December 20 and 29, 2016, respectively.

Next, the People filed *People v. Superior Court* (*Negrete*) (case No. E067345) on December 9, 2017. As in the three previous petitions, they requested an emergency stay, which, on December 12, 2016, we denied indicating we would separately resolve the merits. On December 16, 2016, we ordered *Negrete* considered with this petition and requested an informal response. We again received a response on December 20, 2016, and a reply on December 29, 2016. The four responses and replies filed on December 20 and 29, 2016, are substantially identical.

Each of these petitions raised the same issue as the petition in this case, and each relied on the same declaration attesting to the number of direct-file cases that were

pending in the county at the time. In *Negrete*, the People first offered as an exhibit an e-mail string, including a message from a sitting superior court judge, in support of their assertion that immediate appellate action was necessary to prevent further confusion in the trial courts. The judge's e-mail indicates "that the Prop 57 remands to juvenile court are causing some significant stress since there are no specific protocols that are in place," and that "there is going to be some confusion." The People's e-mail exhibit implies this state of confusion was expected to last until some kind of appellate intervention occurred.

Finally, the People filed *People v. Superior Court* (*E.P.*) (case No. E067384) on December 16, 2016. On December 28, 2016, we denied the petition's request for immediate stay, indicated we would separately resolve the petition on the merits, and requested an informal response. We received a response on January 4, 2017, and a reply on January 13, 2017.

As the foregoing illustrates, the People presented us with five rapid-fire, nearly identical petitions in a two-week span, each with a request for immediate stay on the ground that exigent relief was necessary because rampant confusion was occurring in the trial court. We were also aware that delaying the publication of an opinion resolving the issue the People's petitions presented could have drastic consequences for real parties in interest, or, for that matter, for any minor who was facing prosecution under a complaint that had been directly filed in adult court but had not been transferred to juvenile court; each of the petitions sought an emergency stay on the ground that otherwise a dangerous offender would be released after the transfer to juvenile court took effect. The issue the

6

People's petitions presented was concrete and easily addressed in a single published opinion. Moreover, the issues were well framed, the record was complete, and our only task was to construe Proposition 57, which is a legal question that does not depend on the specific facts of this or any of the other four petitions we ordered considered with it. Finally, as we explain in the final section of this opinion, resolution of this petition required us to do no more than apply "well-settled principles of law [to] undisputed facts." (See, e.g., *Ng*, *supra*, 4 Cal.4th at p. 35 [listing criteria justifying granting a mandamus petition using the accelerated *Palma* procedure].) For all of these reasons, we expedited the petitions as much as possible by ordering them considered together, and by foregoing a hearing we found would have been unnecessary.

We then published an opinion on the merits on January 19, 2017.[3] Therein, we cited *Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 414-417 (*Frisk*), for the proposition that we had created a cause and law of the case by requesting an informal response, receiving and considering the response and reply, publishing an opinion on the merits, and explicitly informing the parties of our conclusion that this opinion created a cause and law of the case, indicating the opinion was therefore something more than a so-called "summary denial." (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 893-894 (*Kowis*) [a summary denial does not create a cause].)

---

[3] In an abundance of caution, we note that, due to clerical error, the opinion failed to explicitly indicate that it would not become final for 30 days. (Cal. Rules of Court, rule 8.490(b)(1).) We saw no reason to modify the opinion based on clerical error (Code Civ. Proc., § 473, subd. (d)) only to grant rehearing and replace our previous published opinion with this one.

Upon further reflection, we realize this might be viewed as a significant departure from what has become something of a maxim in writs jurisprudence, namely, that a mandamus petition may be granted on a peremptory basis without the setting of an order to show cause, thereby creating a cause and constituting law of the case, but that a petition that is denied without the setting of an order to show cause fails to create a cause and cannot constitute law of the case. In 1990, we "point[ed] out the anomaly" in *Standon Co. v. Superior Court* (1990) 225 Cal.App.3d 898, 900, footnote 2. As the anomaly still has not been resolved despite the passage of more than 25 years, we granted rehearing on our own initiative. (Cal. Rules of Court, rule 8.268(a)(1).) Our order specifically invited the parties to brief the merits of the petition and indicated that we might either grant the petition on a peremptory basis or deny it with an opinion after deeming ourselves to have created a cause.[4] We now publish our best attempt to explain

---

[4] We use the vernacular and often refer to this order requesting a response as a *Palma* notice, even though we told the parties we were as likely to deny as to grant the petition. The order reads:

"On the court's own motion, REHEARING IS ORDERED, thereby vacating the opinion filed January 19, 2017, and setting the cause at large in this court. (Cal. Rules of Court, rule 8.268(a)(1), (d).) [¶] Good cause appears in that the court has determined that a fuller treatment is required of the issues related to the denial of a petition by an opinion after issuance of a notice that the court may issue a peremptory writ in the first instance. (See Opn. Filed Jan. 29, 2017, p. 2.) [¶] Because the cause has been set at large again, and to give the parties the opportunity to address these issues and the merits more thoroughly, real party in interest is invited to serve and file, within 10 days of this order, an informal letter response to the petition for writ of mandate filed by the People on December 2, 2016. Petitioner may serve and file an informal letter reply within 10 days after the filing of real party's response. The court may issue a peremptory writ in the first instance, or the court may deny the petition by a written opinion on the merits that determines a cause and constitutes law of the case." Real party in interest filed an informal response on February 16, 2017, and the People filed a reply on February 23, 2017. Neither objected to any aspect of our procedure, and each argued the merits of the

8

why we conclude we had the authority to deny the petition as we have done. In other words, we explain why the logic of the authorities we discuss herein compels the conclusion that, when we follow the procedure we used here in an important and exigent case such as this one, we create a cause and law of the case by taking jurisdiction over the petition, filing an opinion on the merits, explicitly informing the parties of our view on the creation of a cause and law of the case, and, to the greatest extent possible, reserving full periods for rehearing and modification. (Cal. Const. art. VI, § 14.)

*1. Creation of a cause*

The cause language comes from Article 6 of the California Constitution. (See, e.g., Cal. Const., Art. VI, §§ 10 [rules regarding jurisdiction of causes and authorization for the court to comment on evidence, testimony, and credibility of witnesses as "necessary for the proper determination of the cause"]; 12 [rules for transfer and review of "causes" by the Supreme Court]; 14 [rules for appellate decisions on causes].) Particularly relevant here is section 14 of Article VI, which reads, in pertinent part: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated."

---

parties' positions in the same way they had argued their positions in the earlier briefs. The new briefing has not changed our view of the merits, such that, with the exception of some minor stylistic changes, the discussion section of this opinion remains unchanged from the opinion we filed on January 19, 2017. In addition, on March 10, 2017, real party in interest filed a letter bringing to our attention a recently published opinion, *People v. Cervantes* (March 9, 2017, A140464) ___ Cal.App.5th ___ [2017 Cal.App.LEXIS 204], that also addresses Proposition 57's impact on juvenile offenders who had complaints directly filed against them in adult court prior to the enactment of the new law. We have read the case and concluded it does not change our analysis of either the procedural or the substantive issues discussed in this opinion.

Despite its inclusion in California's Constitution, our search for a well-established definition of the term "cause" in this context seems to have produced as many questions as answers. As the California Supreme Court itself has noted, "the term 'cause' is not susceptible to precise definition." (*In re Rose* (2000) 22 Cal.4th 430, 449 (*Rose*).) In fact, the *Rose* court found the term had one meaning in the context of transferring causes, and another in contexts such as "orders denying petitions for review in ordinary civil and criminal cases." (*Id.* at p. 451.) Still, despite noting that "not every matter presented to the court for a ruling . . . is a cause that requires a written decision" (*id.* at p. 452), the court did not propose an affirmative definition of "cause."

Were we less inclined to truly get to the bottom of this issue, we might seize on *Funeral Dir. Assn. v. Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104, 106, in which the California Supreme Court wrote: "It is only after an alternative writ has been issued that the matter becomes a 'cause,' the determination of which, i.e., the granting or denying of a peremptory writ, requires a written decision." (See also *Oak Grove School Dist. v. City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 694 [same].) Were this obviously still the law, our task would be complete. In light of later authorities, however, we fail to see how the issuance of an alternative writ is a precondition to the creation of a cause regardless of whether a petition is granted or denied, at least when a court follows a procedure such as the one we are following here.

The Supreme Court has said: "When an appellate court considers a petition for a writ of mandate or prohibition, it is authorized in limited circumstances to issue a

10

peremptory writ in the first instance, without having issued an alternative writ or order to show cause. (Code Civ. Proc., §[§] 1088, 1105; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222-1223; . . . *Palma*).)" (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1236 (*Lewis*).) This statement cannot be true if the issuance of an alternative writ or order to show cause is necessary to a matter's being a "cause." In other words, once the *Palma* procedure became valid, and courts were allowed to grant peremptory petitions without issuing an alternative writ or order to show cause, engaging in either kind of issuance should only be a sufficient, not a necessary, condition for creating a cause.

The *Palma* court noted that "the decision to grant a peremptory writ, unlike the summary denial of a petition seeking a writ, is determinative of a 'cause' within the meaning of article VI, section 14." (*Palma*, *supra*, 36 Cal.3d at p. 178, fn. 6.) Our *Palma* notice and this opinion have both notified the parties that we are resolving the issue presented on the merits, and that we consider our opinion to have created a cause for the reasons we discuss. What we publish today is therefore as "determinative" as an opinion granting a petition for writ of mandate on a peremptory basis under *Palma*.

Our search for an explanation as to why we did not therefore create a cause has been in vain, as no authority we have found has identified a right of which we have deprived the parties by not issuing an alternative writ or order to show cause before publishing an opinion denying the petition, just as we would have done had we granted the petition. We are again aware that we cannot use an expedited procedure such as this

11

one except in extraordinary cases, but we are also confident this case was sufficiently exigent to qualify.

We have found several cases asserting that a Court of Appeal has three and only three options when it receives a petition for writ of mandate: "(1) deny the petition summarily, before or after receiving opposition; (2) issue an alternative writ or order to show cause; or (3) grant a peremptory writ in the first instance, after compliance with the procedure set forth in *Palma*." (*Lewis*, *supra*, 19 Cal.4th at p. 1239; see, e.g., *Kowis*, *supra*, 3 Cal.4th at pp. 893-894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024 (*Bay Development*).) Not one of these cases explains why a written opinion denying a mandamus petition on the merits after a *Palma* notice requesting a response cannot create a cause. Phrased differently, not one of these cases offers a reason for treating the granting of a petition for writ of mandate differently from the denial of a petition for writ of mandate on a peremptory basis when a Court of Appeal has followed the procedure we describe herein.

We note the right to oral argument cannot fill this gap. As *Lewis* explained, "the statutes and rules governing peremptory writs of mandate and prohibition do not require an appellate court to afford the parties an opportunity for oral argument before the court issues such a writ in the first instance, and in the past this court and the Courts of Appeal have issued peremptory writs in the first instance without holding oral argument." (*Lewis*, *supra*, 19 Cal.4th at pp. 1236-1237.) We see, and we have found in our research, no reason to treat the denial of a mandamus petition, after a *Palma* notice but without an

12

alternative writ or order to show cause, in an opinion that tells the parties it is creating a cause, any differently from the granting of a mandamus petition on a peremptory basis, at least with respect to whether oral argument is required.

We are aware that the last sentence in the passage we quoted in the previous paragraph is: "Our holding in this regard applies only to those proceedings in which an appellate court *properly issues a peremptory writ of mandate or prohibition in the first instance. . . .*" (*Lewis*, *supra*, 19 Cal.4th at p. 1237, italics added.) Still, for the following reasons, this does not mean that oral argument is dispensable in an appropriate case only when the court grants, but not when it denies, a writ petition.

First, the *Lewis* court did not squarely consider any issues regarding the denial of a petition for writ of mandate; in that case, this court, acting as the intermediate appellate court, had granted a mandamus petition, and the writ petitioner argued, as relevant here, that the court lacked the authority to do so without holding oral argument. (*Lewis*, *supra*, 19 Cal.4th at pp. 1238-1239.) " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

Second, and more to the point, *Lewis* did not give a reason why the denial of a writ petition on a peremptory basis using the procedure at issue in this case should be treated any differently from the granting of one. It is noteworthy that the *Lewis* court explicitly said its holding "does not affect the right to oral argument on appeal or after the issuance of an alternative writ or order to show cause." (*Lewis*, *supra*, 19 Cal.4th at p. 1237.) Choosing the right to oral argument on appeal and the right to oral argument when an

13

alternative writ or order to show cause issues as the things to explicitly exclude from the reach of its opinion sheds no light on why oral argument would be required before a writ is denied after a *Palma* notice in an opinion on the merits that indicates it creates a cause, but not before that same petition could be granted.

For these reasons, our decision not to allow oral argument should not prevent us from finding that we created a cause, because, under *Lewis*, oral argument was not something we were obligated to provide. Moreover, "Denying an opportunity for oral argument before the issuance of a peremptory writ of mandate or prohibition in the first instance would be unfair to the parties only if the court's use of the accelerated *Palma* procedure were unwarranted. The remedy for such unfairness is not uniformly to require oral argument before a peremptory writ is issued in the first instance, but rather to restrict the use of that procedure to the narrow category of cases described above." (*Lewis*, *supra*, 19 Cal.4th at p. 1261.) We have already described why we think the importance and exigency of this case would have authorized us to grant a peremptory writ of mandate without having issued an order to show cause or alternative writ.

Nor did we deprive the parties of notice and opportunity to be heard, as we followed the procedure described in *Palma*. (Code Civ. Proc., § 1088 [requiring notice before issuance of a peremptory writ in the first instance]; *Palma*, *supra*, 36 Cal.3d at pp. 179-180.) In fact, petitioner in this case had more opportunity to be heard before receiving our decision than the real party in interest on a petition for writ of mandate would ordinarily have. Had we granted the petition on a peremptory basis, we most

14

likely would have done so after receiving only one brief from the party that did not prevail. Here, the People had an opportunity to file two briefs, the petition and the reply. In addition, we considered the briefs and the record filed in conjunction with four other petitions raising the same issue, such that we actually read 10 briefs from the Petitioner. We then re-opened briefing after publishing and recalling an opinion that explained our views. The issues were especially well framed, and the record was as well developed as it could be, especially given that resolution of the issue posed is a question of law. (See, e.g., *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [the interpretation of a statute "is a question of law"].)

Once again, then, we have searched for, but not found, a definition of "cause" that we could easily apply to this case. We know that issuing an alternative writ or an order to show cause will create a cause. (E.g. *Funeral Dir. Assn. v. Bd. of Funeral Dirs.*, *supra*, 22 Cal.2d at p. 106.) We know that granting a peremptory writ under *Palma* will also determine a cause. (*Palma*, *supra*, 36 Cal.3d at p. 178.) We know that a summary denial will not create a cause. (E.g. *Kowis*, *supra*, 3 Cal.4th at pp. 893-894.) However, it appears we still do not know how these rules apply to an opinion that denies a petition for writ of mandate, but does so in a manner that is no less summary than the manner in which we would have issued a peremptory writ.

We are mindful of *Kowis*'s conclusion that the Court of Appeal there did not create a cause because "[i]t issued neither an alternative writ nor a peremptory writ in the first instance." (*Kowis*, *supra*, 3 Cal.4th at p. 894.) This conclusion follows if it is true

15

that a Court of Appeal lacks the ability to issue anything other than a "summary denial" when it denies a mandamus petition without issuing an alternative writ or order to show cause. But this assumption appears to have less validity when we consider that the authority the *Kowis* court cited in the above-quoted statement was the following quotation: "It is settled law that an appellate court's action denying *without opinion* a petition for a writ of mandate or prohibition is not the determination of a 'cause' requiring oral argument and a written opinion." (*People v. Medina* (1972) 6 Cal.3d 484, 490, italics added; see, e.g., *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 640 [citing *Kowis* for proposition that, "The denial without opinion of a petition for a writ of mandate or prohibition is not res judicata"]; *People v. Carrington* (1974) 40 Cal.App.3d 647, 649 [no law of the case effect attaches when a "petition for a writ has been denied by the Court of Appeal *without opinion*" (original italics)].)

As this case and the authorities we now discuss illustrate, the denial of a petition for writ of mandate without an order to show cause is not necessarily a denial without an opinion. These authorities show the better-reasoned rule is that: "Unless the court *summarily denies the petition* or the respondent performs the act specified in an alternative writ, the matter becomes a 'cause' that must be decided 'in writing with reasons stated.' " (*Lewis*, *supra*, 19 Cal.4th at p. 1241, italics added.)

Our approach illustrates the extent to which the answer to this debate hinges on what is and is not a summary denial. The alleged maxim of jurisprudence that led us to share our thoughts on procedure in such detail appears to assume that any denial of a writ

16

petition that was not preceded by the issuance of an alternative writ is a summary denial, and therefore not a cause. We acknowledge that this appears to be the view of the drafters of California Rules of Court, rule 8.490(b)(1), which ascribes immediate finality to only two types of "decisions regarding petitions for writs within the court's original jurisdiction: [¶] (A) An order denying or dismissing such a petition without issuance of an alternative writ, order to show cause, or writ of review; and [¶] (B) An order denying or dismissing such a petition as moot after issuance of an alternative writ, order to show cause, or writ of review." In contrast, "[a]ll other decision in a writ proceeding are [generally] final 30 days after the decision is filed." As we now explain, however, the logic of the authorities we discuss yields the conclusion that we have discretion, in rare and appropriate cases like this one, to create a cause by issuing a *Palma* notice and filing a written opinion that denies a mandamus petition on the merits and notifies the parties of our intention to create a cause. In other words, we conclude we have the authority, in some cases, to create a cause by filing a denial opinion that is something other than a summary denial.

What, then, is a summary denial? Of the authorities we located, *Lewis* comes closest to providing a definition of general application: "The summary denial of a petition for a prerogative writ properly is viewed as a refusal by the court to exercise original jurisdiction over the matter." (*Lewis*, *supra*, 19 Cal.4th at p. 1260, fn. 18; see *Rose*, *supra*, 22 Cal.4th at p. 445 ["An order summarily denying a petition for writ of mandate or prohibition generally reflects a discretionary refusal to exercise original

17

jurisdiction over a matter that properly may be pursued in the lower courts."].) In this case, we did far more than decline jurisdiction. We ordered four similar petitions considered with this case, issued five *Palma* notices, read five responses and five replies that we would not have had to read had we immediately denied the petition, separately denied stay requests and an independent motion for stay with indications that we would resolve the petitions on the merits separately, published an opinion on the merits and told the parties we were creating a cause, granted rehearing on our own initiative to better explain our position regarding this case's procedural aspects, requested briefing, and then published this opinion, which also expressly tells the parties that we have accepted jurisdiction. If a summary denial is a refusal to take jurisdiction, this opinion is not a summary denial.

*Kowis*, though it does not purport to deny the phrase, "summary denial," directly offers information about what is and is not sufficient in this regard, as it squarely considered whether the denial of a mandamus petition had created a cause. (*Kowis*, *supra*, 3 Cal.4th at p. 894.) There, "the Court of Appeal . . . after obtaining and considering opposition . . . summarily denied the petition with a brief supporting statement. It issued neither an alternative writ nor a peremptory writ in the first instance." (*Ibid.*) The entire opinion denying the petition read: "The petition for writ of mandate and request for stay and the opposition have been read and considered by Presiding Justice Kremer and Justices Wiener and Huffman. The petition is denied. (C*arroll v. Abbott Laboratories, Inc*. (1982) 32 Cal.3d 892.)" (*Id.* at p. 892.)

18

We have no quarrel with[5] the *Kowis* court's statement that, "A short statement or citation explaining the basis for the summary denial does not transform the denial into a decision of a cause." (*Kowis*, *supra*, 3 Cal.4th. at p. 895; see *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 230 ["While it is true that the court accompanied the summary denial with an explanatory comment, we do not regard that comment as a formal opinion (Cal. Const., art. VI, § 14) . . . ."].) At bottom, our response is that the opinion we publish today, like the one we initially published, is far more than a "brief supporting statement." (*Kowis*, *supra*, 3 Cal.4th at p. 894.)

Of course, an opinion's length cannot be the determining factor in whether the denial of a writ petition without the issuance of an order to show cause creates a cause. Otherwise, "unnecessary litigation" would result. (*Kowis*, *supra*, 3 Cal.4th at p. 898.) As *Kowis* noted, "If each summary denial must be parsed to determine if it was necessarily on the merits, or if there was some other possible explanation, uncertainty results. The parties would often be uncertain whether a denial established law of the case until the appellate court decided the question during the later appeal. Such uncertainty could often be unfair as well as inefficient." (*Ibid*.) For this reason, the *Kowis* court rejected the "sole possible ground" rule, which had previously allowed an exception to the default rule that the summary denial of a writ petition does not create law of the case if the only

---

**5** Nor could we "quarrel with" an opinion from the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal. 2d 450.) We emphasize that we are attempting no such thing in this opinion. Rather, we try to explain why, in our view, the patchwork of cases discussing the creation of a cause in the contexts of mandamus petitions leaves room for the procedural approach we have taken.

way the petition could have been denied was on the merits.  (*Id.* at pp. 897-899.)  While rejecting this rule and disapproving several cases that followed it, the *Kowis* court concluded:  "A summary denial of a writ petition does not establish law of the case whether or not that denial is intended to be on the merits or is based on some other reason." (*Id.* at p. 899.)

We agree that preventing unnecessary litigation is a noble goal.  Still, it seems there is no need to fear additional litigation about whether an opinion does or does not create a cause if we take the time to expressly share our thoughts on that subject with the parties.  When we do, there are no questions about what we intended.  Instead, we have made clear what we have done; and this opinion explains why we find we have authority to act as we have.  Respectfully, then, while we acknowledge *Kowis*'s holding and the framework the case establishes, we find them inapplicable here, because the opinion we file now is "something more than" a summary denial.  (*Frisk*, *supra*, 200 Cal.App.4th at p. 417 ["The 'something more' that distinguishes this matter is our discretionary determination to issue a formal opinion in the course of an accelerated writ proceeding where our denial by opinion is a decision on the merits."].)

*Bay Development* also supports our conclusion that an opinion denying a writ petition is not always a summary denial, even if no alternative writ or order to show cause issues.  (*Bay Development*, *supra*, 50 Cal.3d at pp. 1024-1025.)  In that case, the California Supreme Court considered whether a "37-page written opinion" issued by this court fell under the rule for timeliness after a petition is summarily denied even though

20

no alternative writ ever issued.  (*Id.* at p. 1023.)  The court held that the summary denial rule "was intended to apply only to summary denials of writ petitions by the Court of Appeal, and not to cases—such as this case—in which the Court of Appeal sets a writ matter for oral argument, hears oral argument and resolves the matter by full written opinion."  (*Id.* at p. 1024.)  It is true that we had set the matter for oral argument in *Bay Development*, but we did not issue an alternative writ or an order to show cause.  (*Ibid.*)  Nonetheless, the court found the summary denial rule did not apply to our opinion, even though the opinion denied the writ petition.  (*Id.* at pp. 1023-1024.)

In this case, we did not hold oral argument before filing an opinion denying the petition on the merits.  However, *Lewis*, which postdates *Bay Development* by nine years, held that oral argument is not required.  Therefore, this distinction is one without a difference, and we continue to read *Bay Development* to give us at least some authority to deny a mandamus petition, without an order to show cause or an alternative writ, and yet still issue a "decision" that amounts to an "opinion" that creates a cause.  (Cal. Rules of Court, rule 8.490(b)(1), (2) [discussing orders denying writ petitions, and then "[a]ll other decision in a writ proceeding"]; cf. rule 8.490(b)(2)(B) ["If a Court of Appeal certifies its *opinion* for publication or partial publication after filing its *decision* . . . (italics added)].).[6]  In *Frisk*'s words:  "It is true that the Supreme Court in *Bay Development*

---

[6] The finality rule that applies to writs further supports this conclusion, as it gives us discretion to order finality of even a summary denial as if the denial were not summary at all.  (Cal. Rules of Court, rule 8.490(b)(1) [denials without issuance of alternative writ or order to show cause are immediately final "[e]xcept as otherwise ordered by the court"].)

21

recommended that appellate courts in the future 'should follow the contemplated statutory procedure by issuing an alternative writ or order to show cause before setting a writ matter for oral argument.' (*Bay Development*, *supra*, 50 Cal.3d at p. 1025, fn. 8; see also *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 228, fn. 2 (*Guardino*).) Neither *Bay Development* nor *Guardino*, however, contemplated the exigencies encompassed by the accelerated *Palma* process." (*Frisk*, *supra*, 200 Cal.App.4th at p. 416.)

Once again, we agree that the "summary denial" of a writ petition does not create a cause. (E.g. *Kowis*, *supra*, 3 Cal.4th at pp. 893-894.) Rather, the point we make is that the authorities we just discussed confirm our conclusion that this opinion qualifies as more than a summary denial. We now describe the necessary elements of the rule we have discerned from the authorities discussed and show how, when we apply this rule to the facts of this case, we are confident in our conclusion that we have created a cause.

First, the court must take jurisdiction over the merits of the petition. (*Lewis*, *supra*, 19 Cal.4th at p. 1260.) In this case, we issued several orders, including *Palma* notices, considered the briefs and record on five separate petitions, expedited our procedure because the issue presented was both urgent and easily resolved using settled principles of law, granted rehearing and requested more briefing, and published an opinion answering the interpretive question posed on the merits. In our view, we indisputably took jurisdiction.

22

Second, the court must issue an opinion on the merits. (*Frisk*, *supra*, 200 Cal.App.4th at p. 417; *Bay Development*, *supra*, 50 Cal.3d at pp. 1024-1025.) Here, we published two opinions after telling the parties we would resolve the petition later on the merits. Again, we undeniably satisfied this criterion.

Finally, the court should give some consideration to the parties' expectations, as this is another theme that seems to run through the cases discussing creation of a cause. As discussed *ante*, we find that explicitly telling the parties that we conclude we have created a cause, and why, answers *Kowis*'s concerns about endless litigation over these issues. The *Bay Development* court also considered the parties' expectations when finding that the rules regarding summary denials were not intended to apply to our 37-page opinion after oral argument. (*Bay Development*, *supra*, 50 Cal.3d at p. 1025, fn. 7.) *Frisk* does the same by emphasizing the importance of allowing the parties an opportunity for rehearing. (*Frisk*, *supra*, 200 Cal.App.4th at pp. 416-417.)

Explicitly telling the parties that the court considers itself to have created a cause with an explanation as to why, seems to us to resolve the issues discussed in the cases we have analyzed. (*Kowis*, *supra*, 3 Cal.4th at p. 892 [summary denial said only that decision was on the merits with a citation to a single case without explanation.].) In other words, if a Court of Appeal plans to deny a petition for mandamus without issuing an alternative writ or an order to show cause while intending to create a cause, it should signal its conclusion that its opinion, while a denial, is nonetheless something other than a summary denial. It is also helpful, when possible, to preserve the right to rehearing, such

23

that objections to a Court of Appeal's procedure are most likely to start in that court, while still preserving a meaningful right to certiorari to the California Supreme Court. We have again complied in full; we note we granted rehearing on our own initiative with the specific goal of reopening the period in which the parties may request rehearing, as well as the period of finality, we invited briefing on all issues presented, and we explicitly told the parties that we might do exactly what we conclude this opinion does. (Cal. Rules of Court, rule 8.268(d).)

Based on the foregoing, we conclude we have created a cause by proceeding as we did in this action. We next consider the related issue of whether the doctrine of law of the case applies.

### 2. *Applicability of the law of the case doctrine*

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.' " (*Kowis*, *supra*, 3 Cal.4th at pp. 892-893.) This doctrine also applies to pretrial writ proceedings in which a petition is granted on a peremptory basis under *Palma*. (*Id.* at p. 894.)

With respect to the interaction between the creation of a cause and law of the case, the *Kowis* court explained: "If a writ petition is given full review by issuance of an

24

alternative writ, the opportunity for oral argument, and a written opinion, the parties have received all the rights and consideration accorded a normal appeal. Granting the resulting opinion law of the case status as if it had been an appellate decision is appropriate. But if the denial followed a less rigorous procedure, it should not establish law of the case." (*Kowis*, *supra*, 3 Cal.4th at p. 899.)

Here, our opinion denying the petition followed a procedure "less rigorous" than the one described by the *Kowis* court, as we did not issue an alternative writ or allow oral argument. First, though, *Kowis* was not faced with whether oral argument was necessary before law of the case could apply; it was only asked to decide whether an order denying a writ petition, which contained nothing but a citation to a single case with a statement that the decision was on the merits but without any indication as to whether it created a cause or why, created law of the case. (*Kowis*, *supra*, 3 Cal.4th at p. 892 ["We granted review on the question whether the Court of Appeal erred in applying the law of the case doctrine based on a summary denial of an earlier petition for writ of mandate."].) In fact, *Lewis* noted *Kowis* indicated the issue of whether oral argument was required was undecided. (*Lewis*, *supra*, 19 Cal.4th at p. 1255.)

Second, we again emphasize that, under *Palma* and *Lewis* as discussed *ante*, neither oral argument nor an alternative writ or order to show cause is a necessary condition to creating a cause. We therefore fail to see why the absence of either would bar application of the law of the case doctrine, when we satisfy the criteria discussed in the previous section. If an alternative writ, an order to show cause, and oral argument

25

may all be bypassed in appropriate cases when we grant a peremptory writ, then we are unable to find a reason why "the issuance of a peremptory writ in the first instance by an appellate court is a final determination of a cause on the merits" (*Lewis*, *supra*, 19 Cal.4th at p. 1255), but the denial of a writ petition after employing the same procedure is not. Consequently, we conclude that law of the case has been established in this matter.

In finishing our conclusions about the procedure we have used, we note one major distinction between this case and *Frisk*. The petition there concerned the trial court's failure to act on a peremptory challenge to a judge (Code Civ. Proc., § 170.6), and the fact that a petition for writ of mandate is the only means of appellate review of such a challenge (Code Civ. Proc., § 170.3, subd. (d)) helped support the court's conclusion that law of the case applied. (*Frisk*, *supra*, 200 Cal.App.4th at p. 415.) The *Frisk* court explained: "Because writ relief is the only authorized mode of appellate review for peremptory challenges, our decision, in contrast to routine summary denials, is binding on the parties, and cannot be revisited on a subsequent appeal. [Citation.] As such, we judge the petition on its procedural and substantive merits, and our determination whether to grant or deny the petition 'is necessarily on the merits.' " (*Ibid.*)

Here, we are unaware of any statute that prevents the People from seeking review of the trial court's order transferring real party in interest to juvenile court on appeal. Still, we do not see how this affects the applicability of the law of the case doctrine, which, as we have explained, applies when "an appellate court 'states in its opinion a principle or rule of law necessary to the decision.' " (*Kowis*, *supra*, 3 Cal.4th at p. 893.)

26

As we have already explained, we created a cause by taking jurisdiction, filing an opinion on the merits, and explaining to the parties our analyses and conclusions about the expedited procedure we used.

Based on the foregoing, we find, and explicitly tell the parties, that we deem this opinion to be law of the case. We do so with the knowledge that we have done our best to ensure that the periods for rehearing and finality that would apply to an opinion granting the petition will apply to this opinion.

In closing our views on the procedural path we have chosen,[7] we again remind the parties that we in no way intend for this to become our standard operating procedure. As we have labored to explain, this case is uniquely important and exigent. We therefore

---

[7] We briefly reject two potential objections to our approach. One is that we could have accomplished the same task (i.e. the creation of a cause and law of the case) by issuing an order to show cause at a specially set hearing, with the return and traverse due on an expedited schedule. In response, we note the filing of a return and traverse is expected to be more laborious than the preparation and submission of an informal letter brief, such that requests for extensions of time are both expected and routinely granted. (Cf. Cal. Rules of Court, rule 8.487(a)(1) [preliminary response may be served within 10 days] with Cal. Rules of Court, rule 8.487(b)(2) [return usually due within 30 days]). In addition, the hearing takes time and judicial resources that we conserved by adopting the approach we have described. The foregoing analysis explains why this case was uniquely suited for expedition and demonstrates that we have endeavored to find a procedural path that preserves the same rights the parties would have had if we had granted the petition on a peremptory basis under *Palma*. A second argument against creating a cause out of a denial after issuance of a *Palma* notice is that a *Palma* notice traditionally implies that the court is leaning toward issuance of the peremptory writ, and not that it might instead deny the petition in a way that creates a cause. We can understand how a standard *Palma* notice, which simply implies the court might grant the petition, could affect the presentation of the reply. No such issue arises in this case, however, since our *Palma* notice explicitly told the parties we were considering denying the petition in an opinion we deemed to have created both a cause and law of the case.

27

gave the parties an answer to the issue the petition raised in the most expeditious way we concluded the law would allow.

For the foregoing reasons, we conclude that we have created a cause and law of the case by publishing this opinion after the procedural route we chose. We now turn to the merits of the petition.

DISCUSSION

The People contend the trial court misapplied the law when it held that Proposition 57 could be applied to cases that were directly filed against juvenile offenders in adult court before the new law took effect. Because we disagree that applying Proposition 57 to require a juvenile court judge to assess whether real party in interest will go to trial in adult or juvenile court constitutes a retroactive application of the new law, we deny the petition.

We agree with the People in part: changes in the law ordinarily apply prospectively but not retroactively. (See, e.g., Pen. Code, § 3.) "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).)

We also agree with the petition that *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the case that spawned a well-known exception to the default rule of prospectivity, does not apply here. After all, *Estrada* does no more than "inform[] the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all

28

nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324.)  Real party in interest does not argue that, and we therefore do not consider whether, Proposition 57 amounts to a legislative reduction in the punishment for a crime.

Where we part ways with the People is in defining what sorts of applications of a new law will actually count as "retroactive" in the sense we have been discussing.  After all, "[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 7-8.)

The *Tapia* court, considering whether a voter initiative that changed who (the judge rather than counsel) and under what circumstances (only in conjunction with challenges for cause) jurors would be examined during voir dire, described how this understanding of retroactivity intersects with changes to the procedural rules governing criminal trials.  Rejecting a contention that the rule changes required by the voter initiative could only apply to prosecutions for crimes committed after the effective date of the new law, the court explained:  "Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future.  This is a principle that courts in this state have consistently recognized.  Such a statute ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . .  [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." '  [Citations.]  For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' " (*Tapia*, *supra*, 53 Cal.3d at

29

p. 288.)  Thus, "a law governing the conduct of trials is being applied 'prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed."  (*Id.* at p. 289.)

The legislative changes at issue in this petition fit easily into this framework. Requiring a juvenile judge to assess whether real party in interest is tried in adult court strikes us as a "law governing the conduct of trials."  (*Tapia*, *supra*, 53 Cal.3d at p. 289.) Because Proposition 57 can only apply to trials that have yet to occur, it can only be applied prospectively.

Arguing we should not apply this definition from *Tapia* to the facts of this case, the People seize on the following language from *People v. Grant* (1999) 20 Cal.4th 150, 157 (*Grant*):  "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date.  [Citations.]  Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date."  From this, the People reason that "Proposition 57's procedural changes can only be applied to 'new' and 'future' proceedings [citation] and cannot be applied to procedural aspects that have already taken place, such as the previous direct-filing of a case in the superior court or the conduct of a previously-held fitness hearing."

This position is unavailing.  Although real party in interest is now under the jurisdiction of the juvenile court, the People may move to have him transferred to adult court if they think he meets the criteria for trial there.  (Welf. & Inst., § 707, subd. (a).)

30

Even assuming the decision to directly file a complaint against real party in interest in adult court is in fact the last act before Proposition 57 can be applied, the People's position fails because they have not identified how asking them to get the juvenile court's permission before proceeding to a final adjudication in adult court "attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date." (*Grant*, *supra*, 20 Cal.4th at p. 157.)

For comparison, we look to *Strauch v. Superior Court* (1980) 107 Cal.Ap.3d 45, 49 (*Strauch*), which the *Tapia* court cited with approval. (*Tapia*, *supra*, 53 Cal.3d at p. 289.) The real party in interest there filed a medical malpractice complaint against the petitioner. (*Strauch*, at p. 47.) The petitioner moved to strike the complaint because, when the complaint was filed, Code of Civil Procedure section 411.30 provided that "no complaint [for medical malpractice] shall be accepted for filing unless it is accompanied by" a certificate of merit, and no certificate had been filed. (*Strauch*, at pp. 47-48.) The trial court denied the motion, granted the real party in interest relief under Code of Civil Procedure section 473, and allowed the late filing of a certificate of merit. (*Strauch*, at p. 47.) After that ruling, the Legislature amended Code of Civil Procedure section 411.30 to specify that the certificate of merit did not need to be filed until the date of service of the complaint, and that the defect was only subject to demurrer. (*Strauch*, at p. 48.) On writ review of the order denying the motion to strike, the court held it was appropriate to apply the amended statute in support of the trial court's order because the law was procedural, only, and applying it would "not create a new cause of action or deprive a malpractice defendant of any defense on the merits or affect vested rights." (*Id.* at p. 49.)

31

In *Strauch*, as here, a statute created a right (the right to dismissal absent a certificate of merit in *Strauch*, and the right to directly prosecute a juvenile in adult court here) that was later abrogated by legislative amendment. The petitioner in *Strauch* fought to keep that right, just as the People here do. In each case, however, the petition fails to show how the legislative change affects "vested rights." (*Strauch*, *supra*, 107 Cal.App.3d at p. 49; cf. *Aetna Casualty & Surety Co. v. Industrial Accident Com.* (1947) 30 Cal.2d 388 (*Aetna Casualty*) [new law allowing increased recovery from the Industrial Accident Commission could not be applied to claimants whose injuries arose before the new law's effective date because the increased compensation due by the claimants' employers was a substantive rather than procedural change]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188 [Proposition 51, which rejected traditional joint and several liability on tort claims in favor of liability that is proportionate to fault, could not be applied retroactively to causes of action that arose prior to the law's effective date because it decreased the amount of recovery a plaintiff could reasonably obtain].) Having to file a motion to get the juvenile court's permission to try a minor in adult court does not strike us as the sort of changed legal consequences the *Grant*, *Strauch*, and *Tapia* courts had in mind.

Moreover, we are unconvinced that the act of directly filing a case against a juvenile offender in adult court without the permission of the juvenile court is the last act prior to application of Proposition 57. For this portion of our analysis, we look to the materials in support of Proposition 57. (See, e.g., *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901 [official ballot pamphlet useful in interpreting voter initiatives].)

32

As both parties have noted, the ballot pamphlet supporting Proposition 57 contains two express purposes related to juvenile offenders: "Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles"; and "Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) text of Prop. 57, p. 141, Public Safety and Rehabilitation Act of 2016, § 2.) In addition, the legislative analysis supporting Proposition 57 went so far as to state: "the only way a youth could be tried in adult court is if the juvenile court judge in the hearing [under Welfare and Institutions Code section 707, subdivision (a)]] decides to transfer the youth to adult court." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016), analysis by legislative analyst, p. 56.)

A juvenile offender is not "tried in adult court" merely because the People have filed a complaint against him or her there. Rather, "past cases 'compel the holding that an accused is "brought to trial" . . . when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.[8]' " (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1196 [analyzing when a case is brought to trial for purposes of Penal Code section 1382, which requires dismissal if certain speedy trial deadlines are not met].) The

---

**8** We note the trial court and the parties, at the November 29, 2016 hearing at which the trial court granted real party in interest's motion for a fitness hearing, discussed whether the attachment of jeopardy is the last point at which a motion for transfer to adult court can be made, even in a case that was filed before the passage of Proposition 57. We express no view on this question, as it is not presently before us. Our reference to the rule for calculation of when a case has gone to trial for speedy trial purposes is intended only to emphasize that a "trial" has not yet occurred in this case.

People have not shown, nor can they show, that real party in interest has participated in a proceeding in adult court that meets these criteria. They have therefore not shown that the harm Proposition 57's ballot pamphlet said the new law would prevent, namely, "trial" of a juvenile in adult court without the permission of a juvenile judge, has occurred. As we see it, this means the People have not shown that the last act precedent to application of Proposition 57 has already happened, such that requiring a juvenile judge to assess whether real party in interest will be brought to trial in adult court would be applying Proposition 57 retroactively.

Finally, the People argue some temporal qualifiers in the materials supporting Proposition 57, combined with the initiative's relative silence regarding retroactivity, evidence an intent on the part of the voters to only have the initiative's new rules applied to cases filed after its passage. "Specifically, [they contend,] the legislative analysis provided to the voters in the ballot pamphlet includes the stated intent of ensuring that minors 'accused of committing certain severe crimes would *no longer* automatically be tried in adult court' and that a judge would need to make a determination '*before* youths can be transferred to adult court.' (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) analysis by the legislative analyst, p. 56, emphasis added.)" We are unconvinced that the italicized adverbs above imply anything about retroactivity. In fact, this phrasing seems more like an indication that the voters intended Proposition 57's provisions regarding juveniles to be applied immediately; otherwise, it would be untrue that minors are "no longer" automatically tried in adult court, and that a juvenile judge must grant a motion to transfer "before" a trial in adult court can occur.

34

Although portions of Proposition 57 that are not at issue here and some initiatives that are similar to Proposition 57 mention retroactivity while the portion of Proposition 57 that affect juvenile offenders do not, this does not change our analysis. The *Tapia* court was quite clear that the initiative under consideration there was "entirely silent on the question of retrospectivity," and yet it applied the new law anyway. (*Tapia*, *supra*, 53 Cal.3d at p. 287.) In cases like this, " 'the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction [i.e., the presumption of prospectivity], but because they are not in fact retroactive. There is then no problem as to whether the Legislature intended the changes to operate retroactively.' " (*Tapia*, at p. 290, quoting *Aetna Casualty*, *supra*, 30 Cal.2d at p. 394.)

Moreover, "We must assume that [the] voters knew about and followed *Tapia*." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 171.) Because we do precisely this, and because we conclude that Proposition 57 is being applied prospectively in this case, it is of no moment that Proposition 57 does not explicitly address retroactivity.

We publish today's opinion because we recognize that trial courts may need guidance deciding whether and how to apply Proposition 57 to cases that were directly filed in adult court before its passage. We caution that we need not and therefore do not opine about anything other than the retroactivity of the portion of Proposition 57 that requires the juvenile court to permit trial of a minor in an adult criminal court. We do not address the equal protection argument real party in interest advanced in his informal response. (*People v. Pantoja* (2004) 122 Cal.App.4th 1, 10 [court must avoid reaching constitutional issues if case can be resolved on statutory ground].) In addition, although

35

the People asked for advice about how courts should handle direct-filed cases that are transferred to juvenile court and then back to adult court after a successful motion under Welfare and Institutions Code section 707, subdivision (a), we do not purport to guide trial courts regarding other procedural aspects of cases against juveniles now that Proposition 57 has passed.  Any such issues are best left for cases that squarely present them.

DISPOSITION

The petition is denied.

CERTIFIED FOR PUBLICATION

RAMIREZ_____
P. J.

We concur:

McKINSTER_____
J.

SLOUGH_____
J.