Filed 6/8/17

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF RIVERSIDE COUNTY, <br><br>     Respondent; <br><br> JEREMY WALKER, <br><br>     Real Party in Interest. | D071461 <br><br> (Super. Ct. No. RIF1201399) |

PETITION for writ of mandate from the Superior Court of Riverside County, Becky L. Dugan, Judge.  Petition granted.

Michael A. Hestrin, District Attorney, and Donald W. Ostertag, Deputy District Attorney for Petitioner.

Bonnie M. Dumanis, District Attorney, Peter J. Cross, Deputy District Attorney, as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Robert J. Booher, under appointment by the Court of Appeal, for Real Party in Interest.

California Public Defenders Association, Law Offices of the Public Defender and Laura B. Arnold, as Amicus Curiae on behalf of Real Party in Interest.

I.

INTRODUCTION

On November 8, 2016, the voters passed Proposition 57,[1] and the new law became effective the following day. As relevant to this writ proceeding, Proposition 57 eliminated the People's ability to directly file criminal charges against a juvenile defendant[2] in a court of criminal jurisdiction (Adult Court). We must determine whether Proposition 57 applies to a pending case that the People directly filed in Adult Court against real party in interest, Jeremy Walker, several years *prior* to the effective date of the new law. We conclude that Proposition 57 does not apply to Walker's case and that the trial court's transfer of Walker's case from Adult Court to the juvenile court (Juvenile Court) pursuant to the new law was erroneous.[3] Accordingly, we grant the People's writ

---

[1] Proposition 57 is officially titled, "The Public Safety and Rehabilitation Act of 2016." (Prop. 57, § 1.)

[2] Unless otherwise specified, in referring to a "juvenile defendant," "juvenile," or "minor," we intend to refer to a person who allegedly committed a crime while under 18 years of age.

[3] Juvenile Court and Adult Court are both divisions of the superior court, and thus, a transfer from one of these courts to the other does not implicate the subject matter jurisdiction of either court, but rather, "the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548, fn. 3 (*Manduley*).)

petition and direct the trial court to vacate its order transferring Walker's case from Adult Court to Juvenile Court.

## II.

## PROCEDURAL BACKGROUND

In February 2012, the People filed a complaint against Walker in Adult Court, alleging two counts of attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a)) and one count of active participation in a gang (Pen. Code, § 186.22, subd. (a)). With respect to the attempted murder counts, the People alleged two firearm enhancements (Pen. Code, § 12022.53, subds. (d), (e)) and a gang enhancement (Pen. Code, § 186.22, subd. (b)). The record indicates that Walker was 17 years old at the time of the events giving rise to the charges.

The People filed the complaint pursuant to former section 707, subdivision (d) of the Welfare and Institutions Code.[4] That statute permitted the direct filing of criminal charges in Adult Court against a person who was under 18 years of age at the time the crime was allegedly committed, under certain specified circumstances.

A jury found Walker guilty as charged. The jury also found the firearm and gang enhancements true. The trial court sentenced Walker to 80 years to life in prison.

In May 2015, this court ruled that the trial court erred in admitting certain evidence at Walker's trial and reversed his convictions. In September 2015, the remittitur

---

4     Unless otherwise specified, all subsequent statutory references are to the Welfare and Institutions Code.

3

issued in Walker's appeal. Since the issuance of the remittitur, Walker has been awaiting retrial.

On November 8, 2016, the voters passed Proposition 57, which became effective the following day.

In late November 2016, Walker filed a motion to transfer his case from Adult Court to Juvenile Court, in light of Proposition 57. In his motion, Walker argued that Proposition 57 "applies retroactively to direct file cases which are not yet final." (Formatting omitted.)

The People filed an opposition to the motion in which they argued that Proposition 57 did not apply retroactively to cases filed in Adult Court prior to the effective date of the new law.

The trial court held a hearing on Walker's motion on December 12, 2016. At the conclusion of the hearing, the court granted the motion, ruling in relevant part:

> "One side is, it goes to [J]uvenile [C]ourt, because Prop 57 is to be broadly construed. It doesn't speak to retroactivity at all, which of course is the People's argument, if it doesn't speak to it, that means it's prospective.
>
> "So these cases are going to have to be adjudicated again by eventually the Supreme Court, I'm sure, but my order right now is I'm going to grant the motion and order it — put it in [J]uvenile [C]ourt, because I think that's what the intent of the proposition is."

The trial court stayed its order to permit the People to seek appellate review.

That same day, the People filed a petition for writ of mandate/prohibition in the Court of Appeal, Fourth Appellate District, Division 2. In their petition, the People requested that the Court of Appeal order the trial court to vacate its order granting

4

Walker's motion. Three days later, the Administrative Presiding Justice of the Court of Appeal, Fourth Appellate District, transferred the matter to this court.[5]

On December 22, this court issued an order to show cause, directed Walker to file a return, permitted the People to file a traverse, and stayed all further proceedings in the trial court. Thereafter, Walker filed a return, the People filed a traverse, and this court heard argument in the matter.[6]

### III.

### DISCUSSION

*The trial court's order granting Walker's motion to transfer the case from Adult Court to Juvenile Court is premised on an improper retroactive application of Proposition 57*

In their petition, the People argue that this court should order the trial court to vacate its order granting Walker's motion. In support of this contention, the People argue that Proposition 57 does not apply retroactively to cases properly filed in Adult Court prior to the effective date of the proposition, and that the trial court's order transferring Walker's case to Juvenile Court is premised on an improper retroactive application of the law.

---

[5] The matter was transferred to this court in light of our prior decision in Walker's appeal. (See Cal. Rules of Court, rule 10.1000(B)(1)(A) ["If multiple appeals or writ petitions arise from the same trial court action or proceeding, the presiding justice may transfer the later appeals or petitions to the division assigned the first appeal or petition"].)

[6] While this writ proceeding was pending, we granted the San Diego County District Attorney's application to file an amicus brief on behalf of the People. We also granted an application to file an amicus brief on behalf of Walker filed by the California Public Defenders Association and the Law Offices of the Public Defender, County of Riverside. We have considered these amicus briefs, as well as Walker's answer brief to the San Diego County District Attorney's amicus brief.

Walker contends that Proposition 57 applies retroactively to cases filed in Adult Court prior to the effective date of the proposition. In the alternative, Walker contends that the trial court's order constitutes a prospective application of the new law. Walker also argues that the Adult Court lacks jurisdiction over his case pursuant to a section of the Welfare and Institutions Code (§ 602) as amended by Proposition 57. Finally, Walker maintains that to fail to apply Proposition 57 to his case would constitute a denial of equal protection of the law.

We first provide a summary of Proposition 57, before considering whether the proposition may be applied retroactively to cases properly filed in Adult Court before the effective date of the statute. After concluding that Proposition 57 may not be applied retroactively, we next consider whether the trial court's order is premised on a prospective application of the new law. We conclude that the trial court's application of Proposition 57 to Walker's case constitutes an improper retroactive application of the law. We further conclude that the Adult Court does not lack jurisdiction over Walker's case under section 602 and that failing to apply Proposition 57 to Walker's case would not deny him equal protection of the law.

A. *Proposition 57*

    1. *Summary of Proposition 57*

In *People v. Cervantes* (2017) 9 Cal.App.5th 569 (*Cervantes*), review granted May 17, 2017, S241323, the Court of Appeal summarized the state of the law governing the filing of criminal charges against juveniles *prior* to the enactment of Proposition 57.

"Historically, California required a judicial determination of unfitness for juvenile court before a minor could be prosecuted in adult court. [Citations.] Beginning in March 2000 [with the passage of Proposition 21[7]] and continuing until the adoption of Proposition 57, however, the district attorney was authorized, as a matter of executive discretion, to file a criminal action against a juvenile in certain defined circumstances, rather than filing the case in juvenile court, a practice known as 'direct filing' or 'discretionary direct filing.' [Citations.] Some crimes . . . were considered so serious by the voters that, if committed by a minor age 14 or older, juvenile court was not an option; filing in adult criminal court was mandated by statute ('mandatory direct filing')." (*Cervantes*, at pp. 595–596, fn. omitted.)

As noted previously, the electorate adopted Proposition 57 on November 8, 2016, and it became effective the following day. The proposition eliminated the People's ability to directly file charges against a juvenile defendant in Adult Court.[8] (See *Cervantes*, *supra*, 9 Cal.App.5th at p. 596; *People v. Superior Court* (*Lara*) (2017) 9 Cal.App.5th 753, 758 (*Lara*), review granted May 17, 2017, S241231.) The *Cervantes* court summarized Proposition 57 as follows:

"Proposition 57 was designed to undo Proposition 21. After the passage of Proposition 57, the charging instrument for all juvenile crimes must be filed in juvenile court. (See Welf. & Inst. Code, § 602.) While prosecuting attorneys may move to transfer certain categories of cases to criminal court (Welf. & Inst. Code, § 707, subd. (a)(1)), they have no authority to directly and independently

---

[7] "Proposition 21, titled the Gang Violence and Juvenile Crime Prevention Act of 1998 and approved by the voters at the March 7, 2000, Primary Election (Proposition 21), made a number of changes to laws applicable to minors accused of committing criminal offenses." (*Manduley*, *supra*, 27 Cal.4th at pp. 544–545.)

[8] In addition to the juvenile defendant provisions and several uncodified sections, Proposition 57 also amended Article 1, section 32 of the California Constitution governing the consideration of parole and the earning of behavior credits in state prison. Unless otherwise specified, in referring to Proposition 57, we refer to the juvenile defendant provisions and the uncodified sections of the proposition.

file a criminal complaint against someone who broke the law as a juvenile, even by committing the crimes that previously qualified for mandatory direct filing. In cases where transfer to adult court is authorized (§ 707, subd. (b)) (and not all cases qualify), the juvenile court now has sole authority to determine whether the minor should be transferred. (Welf. & Inst. Code, § 707, subd. (a)(2); see *Brown v. Superior Court* (2016) 63 Cal.4th 335, 340–341 . . . [describing history and general provisions of the initiative measure].) Thus, Proposition 57 effectively guarantees a juvenile accused felon a right to a fitness hearing before he or she may be sent to the criminal division for prosecution as an adult." (*Cervantes*, at pp. 596–597, fn. omitted.)

2. *Proposition 57's amendments of sections 602 and 707*

As suggested by the *Cervantes* court's summary, Proposition 57 amended sections 602 and 707. As amended by Proposition 57, section 602 provides:

"Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."[9]

As amended by Proposition 57, section 707, subdivision (a)(1) provides:

---

[9]     Prior to the adoption of Proposition 57, former section 602 provided:

"(a) Except as provided in subdivision (b), any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.

"(b) Any person who is alleged, when he or she was 14 years of age or older, to have committed one of the following offenses shall be prosecuted under the general law in a court of criminal jurisdiction: [certain special circumstances murders and various specified sex offenses]."

8

"(a)(1) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute, or of an offense listed in subdivision (b) when he or she was 14 or 15 years of age, the district attorney or other appropriate prosecuting officer may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction.  The motion must be made prior to the attachment of jeopardy.  Upon such motion, the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the minor.  The report shall include any written or oral statement offered by the victim pursuant to Section 656.2.[10]"

Proposition 57 also added section 707, subdivision (a)(2), which specifies certain criteria that the Juvenile Court shall consider in "decid[ing] whether the minor should be transferred to a court of criminal jurisdiction [(i.e., Adult Court)]."  (§ 707, subd. (a)(2).)[11]  The criteria include the degree of criminal sophistication exhibited by the minor (§ 707, subd. (a)(2)(A)(i)), the minor's prospects for timely rehabilitation (§ 707, subd. (a)(2)(B)(i)), the minor's history of delinquency (§ 707, subd. (a)(2)(C)(i)), the success of prior attempts by the Juvenile Court to rehabilitate the minor (§ 707, subd.

---

10     Section 656.2 specifies certain rights of the victims of crimes allegedly committed by juvenile defendants.

11     Section 707, subdivision (a)(2) provides in relevant part:

"Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction.  In making its decision, the court shall consider the criteria specified in subparagraphs (A) to (E).  If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes. In any case in which a hearing has been noticed pursuant to this section, the court shall postpone the taking of a plea to the petition until the conclusion of the transfer hearing, and no plea that may have been entered already shall constitute evidence at the hearing."

(a)(2)(D)(i)), and the circumstances and gravity of the commitment offense (§ 707, subd.

(a)(2)(E)(i)).

Proposition 57 also amended section 707, subdivision (b) to state as follows:

> "Subdivision (a) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation of one of the following offenses when he or she was 14 or 15 years of age:  [list of numerous offenses including attempted murder]."

Finally, and importantly for this case, Proposition 57 repealed former section 707, subdivision (d), which permitted the People to directly file criminal charges against minors in Adult Court under certain specified circumstances.  As applicable to this case, former section 707, subdivision (d)(1) provided in relevant part:

> "[T]he district attorney or other appropriate prosecuting officer may file an accusatory pleading in a court of criminal jurisdiction against any minor 16 years of age or older who is accused of committing an offense enumerated in subdivision (b).[12]"

Proposition 57 also eliminated various presumptions to be applied by the Juvenile Court in determining whether a minor is "a fit and proper subject to be dealt with under the juvenile court law," (former § 707, subd. (c)) by amending section 707, subdivision (a)(2) and repealing former section 707, subdivision (c).

3. *Proposition 57's uncodified sections*

Proposition 57 contains a number of uncodified sections, three of which Walker cites in his brief.  Section 2 of Proposition 57 provides in relevant part:

---

12    As does section 707, subdivision (b), as amended by Proposition 57, former section 707, subdivision (b) included attempted murder as among the listed offenses.

10

"Purpose and Intent.

"In enacting this act, it is the purpose and intent of the people of the State of California to:

"[¶] . . . [¶]

"4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.

"5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."

Section 5 of Proposition 57 provides, "Amendment.  This act shall be broadly construed to accomplish its purposes.  The provisions of Sections 4.1 and 4.2 of this act[13] may be amended so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor."

Finally, section 9 provides, "Liberal Construction.  This act shall be liberally construed to effectuate its purposes."

4. *The distinctions between the prosecution of offenses in Adult Court and in Juvenile Court*

"Significant differences between the juvenile and adult offender laws underscore their different goals:  The former seeks to rehabilitate, while the latter seeks to punish." (*In re Julian R.* (2009) 47 Cal.4th 487, 496.)  The court in *People v. Vela* (2017) 11 Cal.App.5th 68 (*Vela*) outlined some of these differences:

_____

13     The amendments to sections 602 and 707 are contained in Section 4.1 and 4.2 of Proposition 57.

11

"A prosecutor charges a minor with an offense by filing a juvenile petition, rather than a criminal complaint. [Citations.] Minors 'admit' or 'deny' an offense, rather than plead 'guilty' or 'not guilty.' [Citation.] There are no 'trials,' per se, in juvenile court, rather there is a 'jurisdictional hearing' presided over by a juvenile court judge. [Citation.] The jurisdictional hearing is equivalent to a 'bench trial' in a criminal court. [Citation.] Although a juvenile court judge adjudicates alleged law violations, there are no 'conviction[s]' in juvenile court. [Citation.] Rather, the juvenile court determines—under the familiar beyond the reasonable doubt standard and under the ordinary rules of evidence—whether the allegations are 'true' and if the minor comes within its jurisdiction. [Citation.]

"There is no 'sentence,' per se, in juvenile court. Rather, a judge can impose a wide variety of rehabilitation alternatives after conducting a 'dispositional hearing,' which is equivalent to a sentencing hearing in a criminal court. [Citations.] In the more serious cases, a juvenile court can 'commit' a minor to juvenile hall or to the Division of Juvenile Justice (DJJ), formerly known as the California Youth Authority (CYA). In order to commit a minor to the DJJ, the record must show that less restrictive alternatives would be ineffective or inappropriate. [Citation.] The DJJ, rather than the court, sets a parole consideration date. DJJ commitments can range from one year or less for nonserious offenses, and up to seven years for the most serious offenses, including murder. [Citation.] A minor committed to DJJ must generally be discharged no later than 23 years of age." (*Id.* at pp. 73–74.)

B. *The electorate did not intend for Proposition 57 to apply retroactively*

The People contend that the electorate did not intend for Proposition 57 to apply retroactively. "Whether the voters intended Proposition 57 to apply retroactively is a question of law to which we apply our independent judgment." (*People v. Mendoza* (2017) 10 Cal.App.5th 327, 344 (*Mendoza*).)

1. *Principles governing the interpretation of a voter initiative*

"When interpreting a voter initiative, we apply the same rules that govern statutory construction. We first look to the language of the enactment, giving the words their

12

ordinary meaning. If the law is ambiguous, we refer to other sources of voter intent, including the arguments and analyses contained in the official voter information guide." (*Mendoza*, *supra*, 10 Cal.App.5th at p. 344.)

2. *The presumption in favor of the prospective application of statutes*

"It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).)[14] "The presumption of prospectivity assures that reasonable reliance on current legal principles will not be defeated in the absence of a clear indication of a legislative intent to override such reliance." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1214 (*Evangelatos*).)

The Supreme Court reaffirmed this principle in *People v. Brown* (2012) 54 Cal.4th 314, 319–320 (*Brown*) by referring to " 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the [enacting body] . . . must have intended a retroactive application.' " The *Brown* court explained further that, "[i]n applying this principle, [the California Supreme Court has] been cautious not to infer

_____

14     While certain codes statutorily codify this principle (see, e.g., Pen. Code, § 3, Code Civ. Proc., § 3), the Supreme Court has made clear that language in these codes merely "codif[ies] a general rule of construction" (*Stenger v. Anderson* (1967) 66 Cal.2d 970, 977, fn. 13), and thus, the presumption in favor of prospective application applies with respect to the interpretation of statutes generally. (See *ibid.* [applying rule of prospective application to provision in Welfare and Institutions Code].)

13

retroactive intent from vague phrases and broad, general language in statutes." (*Id.* at p. 319.)  In short, " ' "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' "  (*Id.* at p. 320.)

> 3.  *Neither the text nor the ballot materials establish that the electorate intended for Proposition 57 to be applied retroactively*

The People argue that "there is nothing in either the text of Proposition 57, or the ballot materials submitted to the voters, that demonstrates an intent for the juvenile portions of the law to apply retroactively to cases that have already been filed."  We agree.

The *Mendoza* court reviewed the text of Proposition 57 and concluded, "The text of Proposition 57 contains no express statement of intent regarding prospective or retroactive application."  (*Mendoza*, *supra*, 10 Cal.App.5th at p. 344.)  Our review of the text of the proposition leads us to the same conclusion.

Walker contends that we may infer the electorate's intent to apply Proposition 57 retroactively given the enumeration in section 2 of the stated purposes for the law (i.e., to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles," and to "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court") (Prop. 57, § 2) as well as the statement in section 5 that the act "shall be broadly construed to accomplish its purposes."  (Prop. 57, § 5.)  We disagree. Both statements fall *far short* of the clear indication of retroactivity required under

14

California law. (See *Brown*, *supra*, 54 Cal.4th at p. 319.)[15] To apply Proposition 57

retroactively based on these statements would amount to improperly inferring

"retroactive intent from vague phrases and broad, general language . . . ." (*Brown*, at p.

319.)

Walker also contends that the following statement in the Legislative Analyst's

analysis of Proposition 57 supports the conclusion that the electorate intended for the

proposition to apply retroactively:

> "The measure changes state law to require that, *before* youths can be
> transferred to adult court, they must have a hearing in juvenile court
> to determine whether they should be transferred. *As a result, the*
> *only way a youth could be tried in adult court is if the juvenile court*
> *judge in the hearing decides to transfer the youth to adult court*."
> (Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56,
> italics added in Walker's brief.)

This statement merely describes the effect of changes in the law wrought by

Proposition 57, and says nothing about whether those changes are to apply retroactively.

For the same reason, we are unpersuaded by Walker's contention that the electorate's

intent to apply the law retroactively is demonstrated by the Legislative Analyst's

reference to potential costs savings premised on youths spending less time in prison and

on parole as a result of the proposition. (See Voter Guide, *supra*, at p. 57.) This analysis

---

15    California voters are familiar with text that expresses an intent to have a law apply retroactively. At the same election at which voters adopted Proposition 57, they also voted on Proposition 62, the text of which states: "SEC. 10. Retroactive Application of Act. (a) In order to best achieve the purpose of this act . . . and to achieve fairness, equality, and uniformity in sentencing, this act shall be applied retroactively." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) (hereafter "Voter Guide") text of Prop. 62, p. 163.)

reflects the Legislative Analyst's prediction with respect to the cost savings related to the implementation of the law generally. Nothing in the analysis suggests that the savings predicted—which was estimated to be "a few million dollars annually" (Voter Guide, *supra*, at p. 57)—was in any way based on the proposition being applied retroactively.[16]

We also are unpersuaded by Walker's contention that Proposition 57 may be applied retroactively because "[n]othing in the language of the measure or the Legislative Analyst's treatment of the measure suggested an intention to limit the applicability to those whose cases have been filed or who were at any specific stage of the proceedings." In light of the well-established presumption in *favor* of the *prospective* application of statutes (e.g., *Tapia*, *supra*, 53 Cal.3d at p. 287), the *absence* of language in Proposition 57 reflecting an intent to apply the proposition prospectively does not demonstrate that the voters intended for the law to be applied *retroactively*.

In sum, "the voters did not make their intent clear regarding retroactive application in the text of Proposition 57 nor can we clearly discern their intent from the voter information guide." (*Mendoza*, *supra*, 10 Cal.App.5th at p. 345.) Accordingly, we must apply Proposition 57 prospectively, unless an exception to the presumption in favor or prospective application applies. (*Mendoza*, at p. 345; see *People v. Marquez* (2017)

---

16    Even assuming that there was evidence that the Legislative Analyst's prediction *was* based on a retroactive application of Proposition 57, this would not demonstrate a clear intent of the *electorate* to have the proposition apply retroactively. (See *California Comp. & Fire Co. v. State Bd. of Equalization* (1982) 132 Cal.App.3d 25, 29 [rejecting as "totally unpersuasive" the argument that a law should be applied retroactively because the Legislative Analyst's revenue projection *was* based on retroactive application of the law].)

___ Cal.App.5th ___ [2017 Cal.App. Lexis 440, *5–7] [concluding Proposition 57 is silent on retroactivity] (*Marquez*).) We consider that issue below.

> 4. *The* Estrada *qualification to the presumption of prospective application does not apply*
>
>> a. Estrada *and its progeny*

In *Mendoza*, *supra*, 10 Cal.App.5th 327, the Court of Appeal summarized a qualification to the ordinary presumption of prospective application of statutes that the Supreme Court first developed in *In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*):

> "Even in the absence of voter intent to apply a proposition retroactively, the *Estrada* rule provides a 'contextually specific qualification to the ordinary presumption' of prospective application. (*Brown*, *supra*, 54 Cal.4th at p. 323, citing *Estrada*, *supra*, 63 Cal.2d 740.) When the electorate (or Legislature) amends *'a statute to reduce the punishment for a particular criminal offense*,' the *Estrada* rule provides an inference that the voters 'intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' (*Brown*, at p. 323.) That conclusion is based on the 'premise that " '[*a*] *legislative mitigation of the penalty for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.' " ' (*Ibid.*, quoting *Estrada*, at p. 745, italics added by *Brown*.)" (*Mendoza*, at p. 346, italics added.)[17]

The Supreme Court has subsequently emphasized that *Estrada* "is today properly understood, not as weakening or modifying the default rule of prospective operation . . .

---

[17] Courts have relied on *Estrada* in concluding that a change in the law that entirely decriminalizes conduct or provides a defendant with a new defense to an offense applies retroactively to cases that are not yet final, absent indicia of a contrary intent in the law. (See e.g., *People v. Rossi* (1976) 18 Cal.3d 295, 299–302 (*Rossi*) ["the common law principles reiterated in *Estrada* apply a fortiori when criminal sanctions have been completely repealed before a criminal conviction becomes final"]; *People v. Wright* (2006) 40 Cal.4th 81, 94–95 (*Wright*) [discussing *Rossi* and cases following *Rossi*].)

but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown*, *supra*, 54 Cal.4th at p. 324.) The *Brown* court explained that "the rule and logic of *Estrada*" (*id.* at p. 325) is that a retroactive application of a statute mitigating the penalty for a particular crime is supported by the "inference that the Legislature would prefer to impose the new, shorter penalty rather than to ' "satisfy a desire for vengeance." ' " (*Ibid.*, quoting *Estrada*, *supra*, 63 Cal.2d at p. 745.) As the *Brown* court explained:

> " ' "Nothing is to be gained," ' we reasoned [in *Estrada*], ' "by imposing the more severe penalty after such a pronouncement . . . other than to satisfy a desire for vengeance" ' [*Estrada*, *supra*, at p. 745]—a motive we were unwilling to attribute to the Legislature. On this basis we concluded the inference was 'inevitable . . . that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' (*Ibid.*)"
> (*Brown*, at p. 323.)

However, the Supreme Court has concluded that for statutes for which it can be said that the enacting body may have had a legitimate motive for applying the statute prospectively, the "inevitable" inference of retroactive intent referred to in *Estrada* (*Estrada*, *supra*, 63 Cal.2d at p. 745) does not apply, *even where the statute has a clear ameliorative effect*. For example, in *Brown*, the Supreme Court concluded that a statute that temporarily increased the rate at which inmates could earn presentence conduct credits did not apply retroactively. (*Brown*, *supra*, 54 Cal.4th at pp. 317–318.) While acknowledging that a "prisoner who is released a day early is punished a day less" (*id.* at p. 325), the *Brown* court reasoned that the Legislature may have reasonably believed that

18

"a law that rewards good behavior in prison," (*ibid.*) should only be applied prospectively because "it is impossible to influence behavior after it has occurred." (*Id.* at p. 327.) Thus, the *Brown* court concluded that the "logic of *Estrada*" (*id.* at p. 325) did not support a retroactive application.

Similarly, in *People v. Conley* (2016) 63 Cal.4th 646 (*Conley*), the Supreme Court concluded that the Three Strikes Reform Act (Reform Act) could not be applied retroactively pursuant to *Estrada* so as to mandate "automatic resentencing for third strike defendants serving nonfinal sentences imposed under the former version of the Three Strikes law." (*Conley*, at p. 657.) The Supreme Court explained that, notwithstanding that there could "be no doubt that the Reform Act was motivated in large measure by a determination that sentences under the prior version of the Three Strikes law were excessive," (*id.* at p. 658) the "presumption about legislative intent," (*id.* at p. 656) reflected in *Estrada* did not apply. In support of this conclusion, the *Conley* court noted that the Reform Act did not merely reduce penalties, as in *Estrada*. (*Conley*, at p. 659.) Rather, the Reform Act also contained a "new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence" (*Conley*, at p. 659); thus, as the *Conley* court explained, an "application of the Reform Act's revised sentencing scheme would not be so simple as mechanically substituting a second strike sentence for a previously imposed indeterminate life term." (*Id.* at p. 660.) Under these circumstances, the *Conley* court refused to apply *Estrada* because it could not say with "confidence, as [it] did in *Estrada*, that the enacting body lacked any discernible reason

19

to limit application of the law with respect to cases pending on direct review." (*Id.* at pp. 658–659.)

b. Estrada *does not support a retroactive application of Proposition 57*

Five decisions of the Courts of Appeal have considered whether *Estrada* applies with respect to Proposition 57. (*Mendoza*, *supra*, 10 Cal.App.5th at pp. 345–349; *Lara*, *supra*, 9 Cal.App.5th at p. 774; *Cervantes*, *supra*, 9 Cal.App.5th at pp. 600–602; *Vela*, *supra*, 11 Cal.App.5th at pp. 76–81; *Marquez*, *supra*, ___ Cal.App.5th at pp. ___ [2017 Cal.App. Lexis 440, *9–17].) In four of these cases, the courts have concluded that *Estrada* does not apply. (*Mendoza*, at pp. 346–349; *Lara*, at p. 774;[18] *Cervantes*, at p. 601; *Marquez*, at p. ___ [2017 Cal.App. Lexis 440, *17]; but see *Vela*, at p. 78 [stating "we find an 'inevitable inference' that the electorate 'must have intended' that the potential 'ameliorating benefits' of rehabilitation (rather than punishment), which now extend to every eligible minor, must now also 'apply to every case to which it constitutionally could apply,' " quoting *Estrada*, *supra*, 63 Cal.2d at pp. 744–745].) We agree with the conclusions of the courts in *Mendoza*, *Lara*, and *Cervantes*. Most fundamentally, *Estrada* does not apply because "Proposition 57 does not mitigate the penalty for a particular crime." (*Mendoza*, at p. 347; *Cervantes*, at p. 600; see *Brown*, *supra*, 54

---

18    The *Lara* court's conclusion on this issue is not entirely clear. The *Lara* court stated, "We also agree with the petition that [*Estrada, supra*, 63 Cal.2d 740], the case that spawned a well-known exception to the default rule of prospectivity, *does not apply* here." (*Lara*, *supra*, 9 Cal.App.5th at p. 774, italics added.) However, the *Lara* court then stated, "Real party in interest does not argue that, and we therefore *do not consider*, whether Proposition 57 amounts to a legislative reduction in the punishment for a crime." (*Ibid.*, italics added.)

Cal.4th at p. 324 [*Estrada* applies to changes in the law "*mitigating the punishment for a particular criminal offense*" (italics added)].)[19]

Further, the logic of *Estrada* does not support a retroactive application of Proposition 57. (See *Cervantes*, *supra*, 9 Cal.App.5th at p. 601.) As the *Cervantes* court explained, "We find the rationale underlying *Estrada* . . . inapplicable to the procedural changes implemented by Proposition 57. While Proposition 57 will have a substantive impact on time in custody in some cases—sometimes a big impact—the transfer procedure required under . . . section 707 does not resemble the clear-cut reduction in penalty involved in *Estrada*." (*Ibid.*)

To the *Cervantes* court's observations, we would add that, much like the statutes at issue and *Brown* and *Conley*, we cannot say with any confidence that the voters clearly would have intended the "fundamental policy shift," (*Cervantes*, *supra*, 9 Cal.App.5th at p. 605) brought about by the enactment of Proposition 57 to be applied to cases filed in Adult Court prior to the proposition's effective date. That is because, as with the statutory scheme at issue in *Conley*, applying Proposition 57 to such cases would require much more than simply substituting in a more lenient sentence upon a defendant's conviction. (See *Conley*, *supra*, 63 Cal.4th at p. 660.)

---

[19] Nor can it be said that Proposition 57 is "akin to a defense to criminal charges," as Walker argues in his brief. (Boldface & capitalization omitted.) The statutory changes to sections 602 and 707 summarized in part III.A.2, *ante*, pertain to in which division of the superior court criminal charges against a juvenile may be filed and which law will be applied upon such filings. These amendments bear no resemblance to statutory changes that provide a complete *defense* to previously criminal conduct, which *Estrada*'s progeny have ruled are presumptively retroactive. (See, e.g., *Wright*, *supra*, 40 Cal.4th at pp. 94–95.)

For example, in *Vela*, *supra*, 11 Cal.App.5th 68, prior to the effective date of Proposition 57, the People charged a juvenile defendant in Adult Court and a jury found the defendant guilty of several crimes, including murder. (*Vela*, at p. 71.) While the defendant's case was pending on appeal, Proposition 57 became effective. (*Vela*, at p. 72.) The *Vela* court concluded that *Estrada* applied and that Proposition 57 applied retroactively to defendant's case. (*Vela*, at p. 72.) Accordingly, the *Vela* court was tasked with determining "what should happen with [defendant's] judgment." (*Id.* at p. 81.) The defendant argued that his convictions should be reversed. (*Ibid.*) The *Vela* court disagreed, reasoning: "The jury's convictions, as well as its true findings as to the sentencing enhancements, will remain in place. Nothing is to be gained by having a 'dispositional hearing,' or effectively a second trial, in the juvenile court." (*Ibid.*) After rejecting the People's argument that the failure to provide a transfer hearing constituted harmless error, the *Vela* court stated that it would "seek to strike a middle ground." (*Ibid.*) Accordingly, the *Vela* court conditionally reversed the judgment of the Adult Court and remanded the matter to the Juvenile Court with directions to hold a transfer hearing. (*Id.* at p. 82.)

The *Vela* court explained that "[w]hen conducting the transfer hearing, the [J]uvenile [C]ourt shall, to the extent possible, treat the matter as though the prosecutor had originally filed a juvenile petition in [J]uvenile [C]ourt and had then moved to transfer Vela's cause to [Adult Court]." (*Vela*, *supra*, 11 Cal.App.5th at p. 82.) The court further directed that the Adult Court judgment would be reinstated if "the [J]uvenile [C]ourt determines that it would have transferred [defendant] to [Adult Court]." (*Ibid.*)

22

On the other hand, the *Vela* court concluded that "[if] the [J]uvenile [C]ourt determines that it would not have transferred [defendant] to [Adult Court], then [defendant's] criminal convictions and enhancements will be deemed to be juvenile adjudications as of that date." (*Id.* at pp. 82–83.) The competing arguments at play in *Vela* and that court's selection of the "middle ground" (*id.* at p. 81) demonstrate that, contrary to the straightforward sentence reduction that may be implemented where *Estrada* properly may be applied (*Conley*, *supra*, 63 Cal.4th at p. 660), applying Proposition 57 to cases pending in Adult Court or on appeal would, in many cases, be procedurally complex.[20]

Thus, we are unpersuaded by the *Vela* court's contention that in order not to provide retroactive effect to Proposition 57 "we would have to conclude that the electorate was motivated 'by a desire for vengeance' against [the defendant] and similarly situated minors." (*Vela*, *supra*, 11 Cal.App.5th at p. 78.) On the contrary, clearly a voter who *agreed* with Proposition 57's policy changes could also reasonably intend, for any number of reasons other than "vengeance" (*Estrada*, *supra*, 63 Cal.2d at p. 745), that the change in the law *not* apply to such defendants. For example, as the *Mendoza* court observed, such a voter might reasonably believe that judicial economy would not be best served by transferring a case from Adult Court to Juvenile Court after proceedings in Adult Court have already commenced. (See *Mendoza*, *supra*, 10 Cal.App.5th at pp. 351–352 ["The voters could rationally conclude that applying Proposition 57 prospectively

---

[20]    One need only read the disposition in *Cervantes*, see footnote 32, *post*, to appreciate the complexity of attempting to apply Proposition 57 to cases that were filed in Adult Court prior to its enactment.

would serve the legitimate purpose of not overwhelming the juvenile courts with requests for fitness hearings by those who had already been convicted in adult court for crimes committed as juveniles"].)  Thus, a voter might reasonably intend for the new law not to be applied to cases filed in Adult Court prior to the effective date of the proposition in order to avoid the procedural difficulties created by such an application.  Plainly, such a voter would not be acting out of "vengeance."  (*Estrada*, at p. 745.)  In short, both the procedural difficulties with respect to *how* to apply Proposition 57 retroactively, as well as the existence of a legitimate motive that voters may have had for intending that the proposition apply only prospectively, support our conclusion that *Estrada* does not require a retroactive application of the new law.  (See *Conley*, *supra*, 63 Cal.4th at pp. 658–660.)

Accordingly, we conclude that *Estrada* and its progeny do not support the conclusion that Proposition 57 should be applied retroactively to Walker's case.

C.  *Applying Proposition 57 to Walker's case constitutes an improper retroactive application of the law*

Having concluded that Proposition 57 may not be applied *retroactively* (see pt. III.B, *ante*), we must consider whether the trial court's order is proper on the ground that it is premised on a *prospective* application of Proposition 57.[21]  Walker contends that the trial court properly applied Proposition 57 to his case because applying the proposition to

---

[21]    In the trial court, Walker's motion to transfer the case to the Juvenile Court was based exclusively on the contention that Proposition 57 applied *retroactively*.  In this court, Walker contends that the trial court's order constitutes a proper *prospective* application of Proposition 57.  The People contend that the trial court's order is premised on an improper retroactive application of Proposition 57.

24

a juvenile defendant who has not yet been *tried* in Adult Court constitutes a prospective

application of the law.[22]

1. *The test for determining whether a law is being applied retroactively or prospectively*

In *Tapia*, *supra*, 53 Cal.3d 282, the Supreme Court considered whether various

changes in the criminal law made by Proposition 115 could be applied to crimes

committed before the proposition's effective date. (*Tapia*, at p. 286.) After determining

that the law could be applied only prospectively (*id.* at p. 287), the Supreme Court

considered "what the terms 'prospective' and 'retrospective' mean." (*Id.* at p. 288.) The

defendant in *Tapia* argued that a law is applied retroactively "if it is applied to the

prosecution of a crime committed before the law's effective date." (*Ibid*.) The *Tapia*

court agreed that "[f]or some types of laws, the test which [defendant] proposes is clearly

appropriate." (*Ibid.*) Specifically, the *Tapia* court stated that "a law is retrospective if it

defines past conduct as a crime, increases the punishment for such conduct, or eliminates

a defense to a criminal charge based on such conduct." (*Ibid*.)

However, the *Tapia* court reasoned that the defendant's "proposed test is not

appropriate . . . for *laws which address the conduct of trials which have yet to take place*,

rather than criminal behavior which has already taken place." (*Tapia*, *supra*, 53 Cal.3d at

p. 288, italics added.) Laws that address the conduct of trials may be applied irrespective

of the date on which criminal conduct occurred. (*Ibid.*) Further, laws that address the

---

[22]    While Walker has been tried in Adult Court, he contends that, in light of this court's reversal of the judgment based on that trial, he stands in the same position as any other juvenile awaiting trial in Adult Court.

conduct of trials, *may* be applied prospectively to the extent that "*they relate to the procedure to be followed in the future*." (*Ibid.*, italics added.) The *Tapia* court explained, "[I]t is evident that a law governing the conduct of trials is being applied 'prospectively' *when it is applied to a trial* occurring after the law's effective date, regardless of when the underlying crime was committed or the underlying cause of action arose." (*Id.* at p. 289, italics added.)

In explaining the distinction between prospective and retroactive statutes, the *Tapia* court distinguished *People v. Hayes* (1989) 49 Cal.3d 1260 (*Hayes*), in which the court concluded that a statute that required the exclusion of certain prehypnotic evidence,[23] could *not* be applied to a defendant where the hypnosis occurred *prior* to the effective date of the statute:

> "[Defendant] also interprets our opinion in . . . *Hayes*, *supra*, 49 Cal.3d 1260, as supporting his position. It does not. In *Hayes*[,] we considered the effect of Evidence Code section 795, which requires the exclusion of prehypnotic testimony unless certain statutory procedures were followed at the time of hypnosis. As in our previous cases, we began by reaffirming the presumption that new statutes operate prospectively and proceeded to determine what 'prospective' operation meant in the case before us. We did not hold that the statute would apply, or not, based upon the date the alleged crime was committed. *Instead, we looked to the date of the conduct regulated by the statute*. Because the prehypnotic evidence in question predated the statute, we held that '[t]o invoke section 795 to exclude such evidence . . . would be tantamount to giving the statute

---

[23]    "Prehypnotic evidence" refers to evidence obtained from a witness prior to the witness undergoing hypnosis. (*Hayes*, *supra*, 49 Cal.3d at p. 1274.) In *Hayes*, the court explained that while prior case law established that *post*hypnotic evidence is generally inadmissible (*id.* at p. 1268, italics added), "a witness who has undergone hypnosis is not barred from testifying to events which the court finds were recalled and related *prior* to the hypnotic session." (*Id.* at p. 1270, italics added.)

26

retroactive effect.'  ( . . . *Hayes*, *supra*, 49 Cal.3d at p. 1274.)  The past conduct to which the statute attached legal consequences was the use of hypnosis; the date of the offense was irrelevant."  (*Tapia*, *supra*, 53 Cal.3d at p. 291, italics added.)

The *Tapia* court then applied its definition of the terms "prospective" and "retrospective" in "determin[ing] which of Proposition 115's provisions may and may not be applied to the prosecution of crimes committed before the measure's effective date." (*Tapia*, *supra*, 53 Cal.3d at p. 297.)  The *Tapia* court noted that the provisions in Proposition 115 fell into four categories:  "(A) provisions which change the legal consequences of criminal behavior to the detriment of defendants; (B) provisions which address the conduct of trials; (C) provisions which clearly benefit defendants; and (D) a single provision which codifies existing law."  (*Tapia*, at p. 297.)

After stating that laws that change the legal consequences of behavior to a defendant's detriment *may not* be applied to crimes committed before the proposition's effective date (category A) (*Tapia*, *supra*, 53 Cal.3d at pp. 298–299), the *Tapia* court stated the following:

> "Other provisions of Proposition 115 address the conduct of trials rather than the definition of, punishment for, or defenses to crimes. These provisions include section 2 . . . which eliminates postindictment preliminary hearings; section 4 . . . which gives the People the right to due process and a speedy trial; section 5 . . . which provides that the Constitution shall not be construed to prohibit joinder, makes hearsay evidence admissible at preliminary hearings, and makes discovery reciprocal; sections 6, 7, and 7.5 . . . which reform voir dire; sections 8, 15, 16, 17, and 18 . . . which reform preliminary hearing procedures; section 19 . . . which provides that the absence of cross-admissibility is not a ground for severance; section 20 . . . which requires appointment of counsel who is ready to proceed; section 21 . . . which provides that felony trials shall take place within 60 days of arraignment; section 22 . . .

27

which authorizes continuances to maintain joinder; sections 23, 24, 25, and 27 . . . which reform discovery procedures and provide for reciprocal discovery; and section 28 . . . which provides for appellate review of trial dates and continuances." (*Id.* at p. 299.)

As the quotation indicates, the *Tapia* court defined as provisions "*address*[*ing*] the conduct of trials" (*Tapia*, *supra*, 53 Cal.3d at p. 299, italics added), numerous changes in the law governing *pretrial* proceedings (e.g., the elimination of postindictment preliminary hearings, proceedings governing the admission of hearsay at preliminary hearings, and reciprocal discovery procedures). (*Ibid.*) The *Tapia* court concluded that "*certain* [of these] provisions addressing the conduct of trials," (*id.* at p. 286, italics added) could be applied in the prosecutions of crimes committed prior to Proposition 115's effective date. (*Tapia*, at p. 286.)

In addressing *which* of the provisions addressing the conduct of trials could be applied to the defendant, the *Tapia* court noted that the defendant had "advanced several arguments in an effort to show that application of such provisions in his case, even though addressed on their face to the *conduct of future trials* and not to past criminal behavior, will nevertheless be 'retrospective' as applied to him." (*Tapia*, *supra*, 53 Cal.3d at p. 299.) The *Tapia* court rejected the defendant's argument that changes to procedures

governing voir dire could not be applied to him,[24] *since voir dire had yet to commence in his trial.*[25] (*Tapia*, at pp. 299–300.)

However, and critical for this case, the *Tapia* court concluded that Proposition 115's reciprocal discovery provisions *could not properly be applied prospectively to compel the production of evidence obtained by defense counsel before the effective date of the proposition*. The *Tapia* court reasoned that use of the new law in this context would in fact constitute an impermissible retroactive application of Proposition 115:

> "Application of the discovery provisions to compel production of evidence obtained by defense counsel before Proposition 115's effective date would be retroactive under the principles we have already discussed. This is because counsel can only be guided, while conducting an investigation, by the discovery rules then in force." (*Tapia*, *supra*, 53 Cal.3d at p. 300.)[26]

In the wake of *Tapia*, the Supreme Court has made clear that "a change in procedural law is *not* retroactive when applied *to proceedings that take place after its enactment.*" (*People v. Sandoval* (2007) 41 Cal.4th 825, 845, italics added (*Sandoval*).)

---

[24] According to the defendant, the changes in the voir dire statute could not be applied to him because his counsel "might have sought an earlier ruling on a motion to change venue rather than waiting for the results of voir dire." (*Tapia*, *supra*, 53 Cal.3d at p. 299.)

[25] In describing the procedural history of the case, the *Tapia* court expressly stated that voir dire had yet to commence in the defendant's trial at the time Proposition 115 became effective. (*Tapia*, *supra*, 53 Cal.3d at p. 286.)

[26] Although not of relevance to this issue, the *Tapia* court stated that provisions in Category C could be applied to the defendant under case law extending *Estrada* to provisions "redefin[ing], to the benefit of defendants, conduct subject to criminal sanctions." (*Tapia*, *supra*, 53 Cal.3d at p. 301 [citing *Rossi*, *supra*, 18 Cal.3d 295].) We explained in pt. III.B.4, *ante*, why *Estrada* and its progeny, such as *Rossi*, do not apply in this case. In addition, although not of relevance to this appeal, the *Tapia* court stated that a provision that codified existing law *may* be applied to crimes committed before the codification (Category D). (*Tapia*, at pp. 301–302.)

29

For example, in *People v. Ledesma* (2006) 39 Cal.4th 641 (*Ledesma*), the Supreme Court considered whether a change in the law reducing the number of peremptory challenges that each side could employ in a capital trial could be applied lawfully to the defendant. (*Id.* at p. 663.) The amendment to the law became effective while the defendant was awaiting retrial. (*Ibid.*) Specifically, the law became effective after "pretrial proceedings—including motions and discovery— [had begun] in his retrial," but *prior* to the selection of the jury in the retrial. (*Ibid.*) The *Ledesma* court held that reducing the number of peremptory challenges that the parties could exercise was not an improper retroactive application of the statute because the conduct regulated by the statute—the selection of jurors—had yet to occur:

> "We reject defendant's argument that application of [the new law] to his case is retroactive because the pretrial portions of his trial began before that statute went into effect. The operative date for determining prospective application of a statute is the 'date of the conduct regulated by the statute.' (*Tapia . . .* , *supra*, 53 Cal.3d at p. 291; *see* [*Hayes*, *supra*,] 49 Cal.3d [at p. 1274] [holding that a new statute specifying conditions under which the testimony of a witness who has undergone hypnosis may be admitted could not be applied in a retrial after the effective date of the statute when the witness had been interviewed under hypnosis before the effective date of the statute].) [The new law] governs the conduct of the jury selection portion of the trial. Therefore, application of the statute that was in effect at the time defendant's jury was selected is a proper, prospective application of the statute." (*Id.* at p. 664.)

2. *Applying Proposition 57 to Walker's case constitutes an impermissible retroactive application of Proposition 57*

It is undisputed that, prior to the effective date of Proposition 57, the People properly filed charges against Walker in Adult Court pursuant to former section 707,

subdivision (d).[27]  As outlined in part III.A.1, *ante*, "Proposition 57 eliminated the People's ability to directly *file* charges against a juvenile [defendant] in adult court . . . ." (*Lara*, *supra*, 9 Cal.App.5th at p. 758, italics added; *see Cervantes*, *supra*, 9 Cal.App.5th at p. 596 ["After the passage of Proposition 57, the charging instrument for all juvenile crimes must be *filed* in juvenile court" (italics added)].)  Thus, to apply Proposition 57's new *filing* provisions to conclude that a case properly *filed* in Adult Court *before* Proposition 57's effective date must be transferred to Juvenile Court would be a retroactive application of Proposition 57 under *Tapia*.  (See *Tapia*, *supra*, 53 Cal.3d at p. 300 ["Application of the discovery provisions to compel production of evidence obtained by defense counsel *before* Proposition 115's effective date would be retroactive" (italics added)].)  Stated differently, "the conduct regulated by [Proposition 57]" (*id.* at p. 291, discussing *Hayes*) is the *filing* of charges against a juvenile defendant, and thus, Proposition 57's changes to the law governing the *filing* of charges may not be applied to cases properly filed in Adult Court "*before* the effective date of the statute." (*Ledesma*, *supra*, 39 Cal.4th at p. 664, discussing *Hayes*, italics added.)

Conversely, because the amendments to sections 602 and 707 brought about by Proposition 57 pertain to the *filing* of criminal charges, as applied to Walker, they do not " 'relate to the procedure to be followed *in the future*' " (*Tapia*, *supra*, 53 Cal.3d at p. 288, italics added) and do not "appl[y] to proceedings that [will] take place *after* its enactment." (*Sandoval*, *supra*, 41 Cal.4th at p. 845, italics added.)  Criminal charges

---

[27]    As noted previously (see pt. II, *ante*), the People filed the initial complaint against Walker more than four years prior to Proposition 57's effective date.

were filed against Walker well before the enactment of Proposition 57. (Compare with *Tapia*, at pp. 286, 299 [changes to law governing voir dire may be applied prospectively where voir dire has *not* occurred]; and *Ledesma*, *supra*, 39 Cal.4th at p. 664 [changes to law governing jury selection may be applied prospectively where jury selection has *not* occurred].)

While Walker suggests that *Tapia* provides that the application of a law is necessarily prospectively so long as the *trial* has not begun, *Tapia* is clear that applying a change in the law to a *pretrial* procedure that has already occurred constitutes an impermissible *retroactive* application of the law. (*Tapia*, *supra*, 53 Cal.3d at p. 300 [applying change in law mandating reciprocal discovery to discovery obtained prior to the change in the law constitutes a retroactive application of the law].) Further, all of the cases cited in Walker's brief in support of his contention that Proposition 57 may be applied in his case are distinguishable because they involve the *prospective* application of a statute to a procedure that will occur in the *future*. For example, in *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275 (*Bourquez*), the Court of Appeal concluded that a change in the law occasioned by Proposition 83 to provide for the indeterminate commitment of persons committed under the Sexual Violent Predator Act (§ 6600) could *prospectively* be applied to individuals whose commitment proceedings were pending at the time of the effective date of the change in the law. (*Bourquez*, at p. 1289.) The *Bourquez* court explained that " 'the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date.' " (*Id.* at p. 1288.) The *Bourquez* court

32

concluded that the last event necessary to trigger the application of the statute at issue in that case would occur *at the time of the commitment*, and thus, after the passage of Proposition 83:

> "In determining whether someone is [a sexually violent predator under the law], the last event necessary is the person's mental state at the time of the commitment. For pending petitions, the person's mental state will be determined after the passage of Proposition 83, at the time of commitment." (*Bourquez*, at p. 1289.)

Similarly, in *John L. v. Superior Court* (2004) 33 Cal.4th 158 (*John L.*), the Supreme Court concluded that certain changes in the law brought about by Proposition 21 pertaining to the standard of proof and the admissibility of evidence in juvenile probation proceedings conducted pursuant to section 777 could lawfully be applied to *future proceedings*. (*John L.*, at p. 171.) The *John L.* court reasoned, "Proposition 21's standard of proof and evidentiary provisions concern the conduct and *procedure to be followed in future* section 777 proceedings, i.e., juvenile probation violation hearings held after [the effective date of Proposition 21]." (*Ibid.*, italics added; see also *In re Chong K.* (2006) 145 Cal.App.4th 13, 18–19 (*Chong*) [relying on *John L.* and concluding that "Proposition 21's amendment to section 781 [governing requests to seal juvenile records] applies to all petitions to seal juvenile records brought under that statute *on or after* [the effective date of Proposition 21], regardless of when the underlying offenses occurred" (italics added)].)[28]

_____

[28] Although the *Chong* court described its application of the statutory changes at issue in that case as a "retrospective" application of the law (*Chong*, *supra*, 145 Cal.App.4th at p. 19), it is clear that the *Chong* court meant only that the law could be

*Strauch v. Superior Court* (1980) 107 Cal.App.3d 45 (*Strauch*),[29] is not to the

contrary. In *Strauch*, a plaintiff who filed a medical malpractice complaint failed to

attach to the complaint a certificate of merit, as had been mandated under the law at the

time of the filing of the complaint. (*Strauch*, at p. 47.) The defendants moved to strike

the complaint, and the trial court granted plaintiff's motion for relief from the late filing

for mistake of law pursuant to Code of Civil Procedure section 473. (*Strauch*, at p. 47.)

After the trial court's ruling, *but while the defendant's petition for writ of mandate

challenging the trial court's ruling remained pending*, the law requiring the filing of the

certificate of merit at the time of the filing of the complaint was amended in such a way

so as to "validate" the timing of the plaintiff's filing of the complaint. (*Id.* at p. 48.) The

Court of Appeal concluded that a prospective application of the new statute cured the

plaintiff's filing and the court was not required to consider the propriety of the trial court's

ruling under Code of Civil Procedure section 473. (*Strauch*, at p 49.) Thus, in *Strauch*,

the validity of the procedural action at issue *remained pending* at the time of the effective

date of the new law. In this case, in contrast, the filing of the accusatory pleading against

applied to *offenses* committed before the effective date of the statute. This is made clear
by the fact that the *Chong* court relied on *John L.* in concluding that the change in the law
could be applied to petitions to seal brought *on or after* the effective date of statute,
regardless of when the underlying offenses occurred. (*Ibid.*) Thus, properly understood,
*Chong* stands for the proposition that the changes to Proposition 21 pertaining to petitions
to seal juvenile records may be applied *prospectively* to petitions filed on or after the
effective date of the statute. We disagree with the *Chong* court to the extent that it
described this application of Proposition 21 as being "retrospective" (*Chong*, at p. 19), as
that term is used in *Tapia* and *John L.*

[29] The *Lara* court heavily relied on *Strauch*. (*Lara*, *supra*, 9 Cal.App.5th at pp. 775–
776.) Walker cited *Strauch* both in a supplemental brief discussing *Lara* and *Cervantes*
and in his answer brief to the San Diego County District Attorney's amicus brief.

Walker pursuant to former section 707, subdivision (d) occurred more than four years prior to Proposition 57's repeal of that provision.

In sum, as outlined above, Proposition 57 changes the law governing a procedural event that had already been fully completed in this case as of the effective date of Proposition 57—the filing of charges against Walker. Applying Proposition 57 to Walker's case would thus constitute an improper retroactive application of the law because it would "attach[ ] new legal consequences to . . . an event . . . that was *completed* before the law's effective date." (*Bourquez*, *supra*, 156 Cal.App.4th at p. 1288.) Such an application is improper under *Tapia* and its progeny because, in filing charges against Walker, the People could "only be guided . . . by the [law] then in force." (*Tapia*, *supra*, 53 Cal.3d at p. 300.)

Accordingly, we conclude that the trial court's application of Proposition 57 to Walker's case constitutes an improper retroactive application of the proposition.

3.  *We respectfully disagree with the conclusions of the Courts of Appeal in* Cervantes *and* Lara *that a prospective application of Proposition 57 requires that a fitness hearing be held in cases directly filed in Adult Court prior to the effective date of Proposition 57*

We have carefully considered the decisions of the Courts of Appeal in *Cervantes* and *Lara* concluding that Proposition 57 properly applies prospectively to cases directly filed in Adult Court before the effective date of Proposition 57. (See *Cervantes*, *supra*, 9 Cal.App.5th at p. 602; *Lara*, *supra*, 9 Cal.App.5th at p. 774–775.) We respectfully disagree with the reasoning and conclusions in both cases.

35

In *Cervantes*, the Court of Appeal concluded that "applied prospectively, Proposition 57 requires a fitness hearing before a juvenile felon is 'tried in Adult Court' initially or on remand." (*Cervantes*, *supra*, 9 Cal.App.5th at p. 602, capitalization & italics omitted, quoting Prop. 57, § 2.) In support of this conclusion, the *Cervantes* court noted that both the uncodified statement of purpose and intent in section 2 of Proposition 57 as well as the Legislative Analyst's summary of the proposition refer to the law as changing whether a juvenile could be "tried in adult court." (Prop. 57, § 2 ["In enacting this act, it is the purpose and intent of the people of the State of California to . . . [r]equire a judge, not a prosecutor, to decide whether juveniles should be *tried in adult court*" (italics added), (Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56 ["the only way a youth could be *tried in adult court* is if the juvenile court judge in the hearing decides to transfer the youth to adult court" (italics added)].) From such statements, the *Cervantes* court concluded, "the phrase, 'tried in adult court'—or the prospect of being tried in adult court upon the filing of a transfer motion—appears to be the trigger for a juvenile's right to a fitness hearing." (*Cervantes*, at p. 602; see also *Lara*, *supra*, 9 Cal.App.5th at pp. 776–777 [employing similar reasoning].)

The difficulty with this reasoning is that it is unmoored to any of the operative text of Proposition 57. As the *Cervantes* court acknowledged, while statements of intent or purpose "in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute." (*Cervantes*, *supra*, 9 Cal.App.5th at p. 604.) However, such provisions are "*not* intended to be a substantive part of the code section or general law that the bill enacts . . . ."

36

(*People v. Allen* (1999) 21 Cal.4th 846, 858, fn. 13; accord 1A Sutherland, Statutory Construction (7th ed.) § 20:3.)  In addition, while we have no quarrel with the *Cervantes* court's statement that "the Legislative Analyst's interpretation" of a statute may be useful in determining "voter intent" (*Cervantes*, at p. 604), the plain text of a statute must prevail over unenacted language in legislative history.  (See *In re Cervera* (2001) 24 Cal.4th 1073, 1079–1080 [declining to give effect to statements in legislative history concerning effect of Three Strikes law because "it was the Three Strikes law that was enacted, not any of the documents within its legislative or initiative history.  A statute, of course, must prevail over any summary [in the legislative history]".)

Neither the *Lara* court nor the *Cervantes* court cites to *any* language in the *operative text of Proposition 57* stating that a juvenile may no longer be *tried* in Adult Court without a transfer hearing.  That is because there is no such language.  As discussed above, Proposition 57 eliminated the People's ability to directly *file* charges against a juvenile defendant in Adult Court.  (See pt. III.A.1, *ante*.)  If the text of Proposition 57 provided that a juvenile may no longer be *tried* in Adult Court, then we might agree with the *Lara* and *Cervantes* courts that, under *Tapia*, the change in the law would apply to cases not yet tried.  (See *Tapia*, *supra*, 53 Cal.3d at p. 289 ["a law governing the conduct of trials is being applied 'prospectively' *when it is applied to a trial occurring after the law's effective date*" (italics added)].)  However, absent such text, we cannot agree with the courts in *Lara* and *Cervantes* that Proposition 57 may properly be applied prospectively to cases filed in Adult Court prior to the effective date of the proposition.

37

The remainder of the arguments offered by the *Cervantes* and *Lara* courts are also unpersuasive. The *Cervantes* court suggested that Proposition 57 may be applied to cases pending in Adult Court at the time the proposition became effective for the following reason:

> "Section 707 describes its reach broadly, indicating it applies '[i]n *any case* in which a minor is alleged to be a person described in Section 602.' (Welf. & Inst. Code, § 707, subd. (a)(1), italics added.) *We see nothing in Welfare and Institutions Code section 707 that requires the allegation to be pending in [J]uvenile [C]ourt at the time of the fitness hearing.*" (*Cervantes*, *supra*, 9 Cal.App.5th at p. 602, second italics added.)

However, section 707, subdivision (a)(1) further provides:

> "In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute, or of an offense listed in subdivision (b) when he or she was 14 or 15 years of age, *the district attorney or other appropriate prosecuting officer may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction.*" (Italics added.)

The italicized text above makes clear that a motion to transfer under section 707 applies where the matter is "pending in [J]uvenile [C]ourt" (*Cervantes*, *supra*, 9 Cal.App.5th at p. 602). Otherwise, there would be no need for the prosecuting attorney to make a motion to transfer the minor from Juvenile Court to Adult Court.

The *Cervantes* court also stated that the uncodified provisions of Proposition 57 such as section 5 (mandating that Prop. 57 be "broadly construed to accomplish its purposes") and section 9 (stating that Prop. 57 shall be "liberally construed to effectuate its purposes") support the conclusion that Proposition 57 is to be applied to cases filed in Adult Court before the effective date of the proposition. (*Cervantes*, *supra*, 9

38

Cal.App.5th at p. 604). As discussed above, to rely on such broad principles of interpretation, in the absence of *any* statutory text supporting a retroactive application of the statute, is contrary to the Supreme Court's admonishment not to "infer retroactive intent from vague phrases and broad, general language." (*Brown*, *supra*, 54 Cal.4th at p. 319.) Indeed, the Supreme Court has specifically rejected such reasoning. (*DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 173 ["The statement in the Education Code that its provisions are to be liberally construed with the view to effect its objects and promote justice (§ 2) cannot be interpreted as a declaration that any of its sections is to be given retroactive effect"].)

Similarly, the *Cervantes* court stated that the tenet of statutory interpretation that courts must "read a statute in a manner to effectuate its underlying purpose," (*Cervantes*, *supra*, 9 Cal.App.5th at p. 604) is "significant, [and] indeed controlling." (*Ibid.*) The Supreme Court has rejected similar reasoning:

> "[D]efendants' claim that the 'remedial' purpose of the measure necessarily demonstrates that the electorate must have intended that the proposition apply retroactively cannot be sustained. Although the 'findings and declaration of purpose' included in the proposition clearly indicate that the measure was proposed to remedy . . . perceived inequities . . . , such a remedial purpose does not necessarily indicate an intent to apply the statute retroactively. Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Evangelatos*, *supra*, 44 Cal.3d at p. 1213.)

We are also unpersuaded by the *Cervantes* court's related reasoning that Proposition 57 must be applied to cases filed in Adult Court prior to its effective date in

39

order to effectuate the "fundamental policy shift" of the proposition's "rejection of the concept of mandatory direct filing" (*Cervantes*, *supra*, 9 Cal.App.5th at p. 605), and to further the electorate's "[a]meliorative [i]ntent" (*id.* at p. 605, italics omitted). With respect to the first rationale, the *Cervantes* court cited no authority, and we are aware of none, that supports the conclusion that the magnitude of the public policy change caused by a new law is relevant in determining whether a change in the law may be applied to a procedure that has already occurred in the case. In our view, the second rationale ("ameliorative intent") echoes *Estrada*, which, as the *Cervantes* court concluded, is improper. (Compare *Cervantes*, at p. 595 ["the statutory amendments under Proposition 57 do not amount to a reduction of a penalty and are not subject to retroactive application under *Estrada*"] with *id.* at pp. 606–607 [stating that the opportunity for a transfer hearing "while not a 'mitigation of penalty' in the *Estrada* sense, must be recognized as ameliorative in intent, and sometimes in substance"].)

We also do not find the reasoning of the *Lara* court to be convincing. After discussing the Supreme Court's decision in *Tapia*, the *Lara* court reasoned:

> "The legislative changes at issue in this petition fit easily into this framework. Requiring a juvenile judge to assess whether real party in interest is tried in adult court strikes us as a 'law governing the conduct of trials.' (*Tapia*, *supra*, 53 Cal.3d at p. 289.) Because Proposition 57 can only apply to trials that have yet to occur, it can only be applied prospectively." (*Lara*, *supra*, 9 Cal.App.5th at pp. 774–775.)

To begin with, the *Lara* court's analysis appears to assume that all laws governing the "conduct of trials," are laws pertaining to "trials that have yet to occur." (*Lara*, *supra*, 9 Cal.App.5th at pp. 774–775.) However, as discussed above (see pt. III.C.1, *ante*),

*Tapia* makes clear that the category of laws governing "the conduct of trials" includes many *pretrial* procedures, such as reciprocal discovery procedures. (*Tapia*, *supra*, 53 Cal.3d at p. 299.) *Tapia* also makes clear that the application of a change in the law to an event that has already occurred in a case, is a *retroactive* application of the law. (*Tapia*, at p. 300 [to apply change in the law governing reciprocal discovery provisions to discovery obtained *prior* to the effective date of the changed law "would be retroactive under the principles we have already discussed"].) Thus, as discussed above (see pt. III.C.2, *ante*), to apply Proposition 57's change in the law governing the *filing* of charges against juveniles to filings that had occurred prior to the effective date of the changed law is a retroactive application of the proposition. (See *Tapia*, at p. 300.)

We are similarly unconvinced by the *Lara* court's dismissal of the People's contention in that case, which we find persuasive, that Proposition 57 may not be applied prospectively to the procedural aspects of a case that have already occurred, such as the direct filing of the case in Adult Court, because such an application is, in fact, a retroactive application of the law. In rejecting this contention, the *Lara* court reasoned as follows:

> "[T]he People reason that 'Proposition 57's procedural changes can only be applied to 'new' and 'future' proceedings [citation] and cannot be applied to procedural aspects that have already taken place, such as the previous direct-filing of a case . . . . [¶] This position is unavailing. Although real party in interest is now under the jurisdiction of the [J]uvenile [C]ourt, the People may move to have him transferred to [A]dult [C]ourt if they think he meets the criteria for trial there. ( . . . § 707, subd. (a).) Even assuming the decision to directly file a complaint against real party in interest in [A]dult [C]ourt is in fact the last act before Proposition 57 can be applied, the People's position fails because they have not identified

41

how asking them to get the [J]uvenile [C]ourt's permission before proceeding to a final adjudication in adult court 'attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date.' " (*Lara*, *supra*, 9 Cal.App.5th at p. 775.)

To begin with, the *Lara* court's unexplained assertion that the real party was "now under the jurisdiction of the [J]uvenile [C]ourt" is conclusory, (*Lara*, *supra*, 9 Cal.App.5th at p. 775)[30] and we are not persuaded by the *Lara* court's suggestion that Proposition 57 requires the People to get "permission" from the Juvenile Court before proceeding to a "final adjudication" in a case that was properly filed in Adult Court prior to the effective date of the proposition. (*Lara*, at p. 775.) On the contrary, as we have explained, Proposition 57 changes the court in which the People may *file* criminal charges, and in that way alters where the People may commence a proceeding, rather than barring the People from proceeding to a "*final* adjudication" (*Lara*, at p. 775, italics added) in Adult Court. Finally, contrary to the *Lara* court, we conclude that applying Proposition 57 to cases properly filed in Adult Court under prior law *does* attach a new legal consequence to an event completed prior to the change in the law. (*Lara*, at p. 775.) Specifically, such application attaches a new legal consequence to the prior proper *filing* of charges in Adult Court, an event completed prior to the change in the law, by invalidating the filing and transferring the matter back to Juvenile Court.

---

30    Elsewhere in its opinion, the *Lara* court explained that "[p]rior to the passage of Proposition 57, the People directly filed a complaint against real party in interest, a minor, in [A]dult [C]ourt under the authority of former section 707, subdivision (d)(2) . . . ." (*Lara*, *supra*, 9 Cal.App.5th at p. 758.)

Finally, neither the *Cervantes* court nor the *Lara* court identified any procedural mechanism in *Proposition 57* by which an Adult Court may transfer to the Juvenile Court a case that was pending in Adult Court as of the effective date of the proposition. As discussed above, the *Lara* court merely asserted that the real party was now under the jurisdiction of the Juvenile Court (*Lara*, *supra*, 9 Cal.App.5th at p. 775), and the *Cervantes* court looked to two statutes, section 604 and Penal Code section 1170.17,[31] as "analogue[s]," that could "provide a procedural framework for a transfer to juvenile court." (*Cervantes*, *supra*, 9 Cal.App.5th at pp. 613–614.) In our view, the absence of any mechanism *within* Proposition 57 to effectuate such transfers further demonstrates

---

[31] The *Cervantes* court explained that section 604 "provides for suspension of proceedings in criminal court and certification to juvenile court when it is discovered that the defendant was a minor when the crime was committed." (*Cervante*s, *supra*, 9 Cal.App.5th at pp. 613–614.)

The *Cervantes* court stated that Penal Code section 1170.17 "provides for a judicial assessment of fitness before sentencing whenever a juvenile felon has been 'prosecuted' under the criminal law 'and the prosecution was lawfully initiated in a court of criminal jurisdiction without a prior finding that the person is not a fit and proper subject to be dealt with under the juvenile court law.' " (*Cervantes*, at pp. 614.) However, the *Cervantes* court noted that "[u]nder the California Rules of Court . . . [the defendant] and other juvenile felons tried in criminal court under the direct filing procedure are not eligible to bring a motion under [Penal Code] section 1170.17. The procedure described in that section may nevertheless be used on remand for the fitness hearing we order under Proposition 57." (*Ibid.*)

While this appeal was pending, we asked the parties for supplemental briefing concerning what effect, if any, Penal Code section 1170.17 has on the issue in this case. The People argued that the electorate's failure to abrogate Penal Code section 1170.17 "indicates an intent for [Proposition 57] to apply prospectively." We need not address the People's argument in light of our conclusion that Proposition 57 does not apply to cases filed in Adult Court prior to the effective date of the proposition, for the reasons stated in the text.

that the proposition was not intended to be applied to cases filed in Adult Court prior to the effective date of the proposition.

In short, the procedure approved in *Cervantes* and *Lara*—the transfer of a minor's case from Adult Court to Juvenile Court to permit the People to bring a motion to transfer the case back to Adult Court under the new law—does not constitute a proper *prospective* application of *Proposition 57*. Rather such a procedure is premised on the combination of an impermissible *retroactive* application of Proposition 57 to invalidate a properly direct filed case under the former law and the borrowed "procedural framework" (*Cervantes*, *supra*, 9 Cal.App.5th at p. 613) of a law *outside* of Proposition 57 to transfer the case from the Adult Court to the Juvenile Court. Because we see nothing in either Proposition 57 or California law that would justify or require such transfers, we decline to follow the *Cervantes* and *Lara* courts. (See *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 772 [refusing to "usurp the legislative role, creating, in the worst scenario, a Frankenstein's monster whose existence the voters never contemplated"].)[32]

_____

[32]     For the reasons stated in the text, the absence of any procedural mechanism within Proposition 57 with respect to the manner in which it should be applied to cases filed in Adult Court prior to the effective date of the statute demonstrates that the electorate did not intend for it to be applied to such cases as a matter of *statutory interpretation*. Further, the absence of any such statutory procedural mechanisms would likely pose great challenges for trial courts as they attempt to uniformly *implement* Proposition 57 in such cases. Consider the complexity of the disposition in *Cervantes*, in which the Court of Appeal explained how Proposition 57 should be applied on remand in an appeal in which the judgment was affirmed in part and reversed in part:

> "The judgment is affirmed as to counts 3, 8, 9, 11, 12, 13 and 14 and
> their accompanying enhancements and findings. The judgment is

44

D. *The Adult Court continues to have jurisdiction over Walker, notwithstanding Proposition 57's amendment of section 602*

Walker argues in the alternative, in an undeveloped argument, that "[u]nder the language of [§ 602], the moment Proposition 57 became effective, all juvenile [defendants] prosecuted in [Adult Court] without a transfer hearing fell under the jurisdiction[33] of the [J]uvenile [C]ourt." Walker's claim raises an issue of statutory interpretation, which we review de novo, applying the principles outlined in part III.B.1, *ante*.

---

reversed as to counts 1, 2, 4 through 7, 10 and 15, together with accompanying enhancements and findings, as is the sentence on all counts. . . . The cause is remanded for further proceedings in accordance with this opinion. [¶] Before any further proceedings are conducted in criminal court, Cervantes may avail himself of a fitness hearing, and if he does so, the matter shall be transferred to the juvenile court for a transfer hearing under . . . section 707. The trial court shall suspend criminal proceedings pending the outcome of that hearing. The transfer hearing shall be conducted substantially in compliance with the views expressed in this opinion. . . . [¶] After the transfer hearing, if the case is transferred to the criminal court, the district attorney may elect to retry the reversed counts within the time allowed by statute. The time limit shall run from the date of the juvenile division's order on the fitness hearing. If the district attorney elects not to retry those counts, the charges shall be dismissed. After retrial, or after dismissal of the reversed counts, Cervantes shall be resentenced . . . ."

33    As alluded to in part I, *ante*, the Supreme Court has explained that the term "jurisdiction" in section 602 does not refer to "subject matter jurisdiction," but rather, to "the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions." (*Manduley*, *supra,* 27 Cal.4th at p. 548, fn. 3 [discussing former section 602, subdivision (a)].) Thus, we interpret Walker's argument as a contention that section 602 provides that the juvenile court law applies to all juvenile defendants whose cases were pending in Adult Court, without having been subject to a transfer hearing, upon the effective date of the statute.

45

As noted previously (see part III.A.1, *ante*), as amended by Proposition 57, section 602 provides:

> "Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the [J]uvenile [C]ourt, which may adjudge such person to be a ward of the court." (Italics added.)

To begin with, while section 602 describes those persons who are within the jurisdiction of the Juvenile Court, section 602 does not state that such persons are *exclusively* within the jurisdiction of the Juvenile Court. (See *Cervantes*, *supra*, 9 Cal.App.5th at p. 598 [stating that section 602 "does not use the term 'exclusive' "].) Nor does section 602 contain *any* express restrictions on the jurisdiction of the *Adult Court*. (See *Cervantes*, at p. 598 [rejecting juvenile defendant's contention that section 602 "gives the [J]uvenile [C]ourt 'exclusive jurisdiction' over his case and the cases of all juvenile [defendants] whose cases are not yet final on appeal—at least until a fitness hearing is conducted" (fn. omitted)].)

Further, in light of the reference to section 707 in section 602, section 602 is best interpreted as providing that "[a]fter the passage of Proposition 57, the *charging instrument* for all juvenile crimes must be filed in juvenile court," (*Cervantes*, *supra*, 9 Cal.App.5th at p. 596, citing § 602, italics added) and that a prosecutor may file a "motion to transfer," (§ 707, subd. (a)(1)) the case from Juvenile Court to Adult Court. We are unpersuaded by Walker's contentions that interpreting section 602 as providing that the Adult Court lacks jurisdiction over his case is necessary in order to further the

46

voters' intent "that more juveniles be rehabilitated,"[34] for all of the reasons discussed in part III.C, *ante*, in connection with our discussion of whether the application of Proposition 57 to Walker's case to require that the case be transferred from Adult Court to Juvenile Court would constitute a prospective application of the provisions enacted under the proposition.  In short, we agree with the *Cervantes* court that section 602 does not "oust the [Adult Court] of jurisdiction," (*Cervantes*, at p. 599) in a case already pending in Adult Court under former law.  (See *ibid.*  ["Here, [Adult Court] lawfully assumed jurisdiction under pre-Proposition 57 law and retained jurisdiction throughout the trial; section 602 does not oust the criminal division of jurisdiction upon remand after an appeal"].)

Accordingly, we conclude that the Adult Court continues to have jurisdiction over Walker, notwithstanding Proposition 57's amendment of section 602.

E. *Failing to apply Proposition 57 to Walker's case does not constitute a denial of equal protection of the law*

Walker contends that to fail to apply Proposition 57 to him and other "minors like him," would violate his right to equal protection under the state and federal constitutions. We apply the de novo standard of review to this claim.  (See *Yohner v. California Dept. of Justice* (2015) 237 Cal.App.4th 1, 11–12 [applying de novo standard of review to claim that law violated " 'equal protection principles' " (*id.* at p. 11)].)

---

34    In support of this argument, Walker cites to the uncodified portions of Proposition 57 discussing the rehabilitative purpose of the proposition (Prop. 57, § 2) and the voter's intent that the proposition be construed "broadly" (*id.*, § 5) and "liberally" (*id.*, § 9) that we address in part III.B.3 and III.C.3, *ante*.

1. *Governing law*

Both the United States Constitution and the California Constitution guarantee the equal protection of the laws. (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7; see *In re Evans* (1996) 49 Cal.App.4th 1263, 1270 [noting that "(t)he scope and effect of the two clauses is the same"].)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*Brown*, *supra*, 54 Cal.4th at 328.) "The second step is determining whether there is a sufficient justification for the unequal treatment. The level of justification needed is based on the right implicated. When the disparity implicates a suspect class or a fundamental right, strict scrutiny applies. [Citation.] When no suspect class or fundamental right is involved, the challenger must demonstrate that the law is not rationally related to any legitimate government purpose." (*Mendoza*, *supra*, 10 Cal.App.5th at p. 350.)

2. *Application*

Walker contends that it would violate equal protection principles to treat him differently "from those minors who are alleged to have committed analogous crimes, but whose alleged offenses occurred after November 8, 2016." In addition to comparing

48

himself to the class of defendants who *committed offenses* after the adoption of Proposition 57, Walker also appears to contend that it violates equal protection principles to treat juvenile defendants differently "based solely on the date on which a *felony complaint against them was filed* in superior court." (Italics added.)

We assume, strictly for purposes of this decision, that Walker is similarly situated to those juveniles who committed offenses and/or had felony complaints filed against them *after* the effective date of Proposition 57. (Compare *Cervantes*, *supra*, 9 Cal.App.5th at p. 598, fn. 38 [defendant who committed crimes and who had been convicted of crimes in Adult Court prior to enactment of Proposition 57 "*is not similarly situated* with a juvenile felon who committed his crimes after Proposition 57 was enacted" (italics added)]; with *Mendoza*, *supra*, 10 Cal.App.5th at p. 350 [concluding defendant challenging Proposition 57 on equal protection grounds who had previously suffered a conviction in Adult Court "*is similarly situated* with a class of hypothetical individuals who are 16 or 17 years old and accused of crimes that could result in transfer to adult court, but whose trials had not commenced before Proposition 57 became effective" (italics added)].)

With respect to the second prong of our equal protection analysis, we reject Walker's undeveloped assertion that "[g]iven that children have fundamental rights . . . any disparate treatment of real party and those minors whose alleged offenses came after the passage of Proposition 57 must be justified under strict scrutiny." The classification that Walker contends violates equal protection is not one based on *age*, but rather, is one based on when a *crime was committed* or a *complaint was filed*. Further, while we agree

49

with Walker that "children have fundamental rights," Walker fails to establish that Proposition 57 impinges on any of those fundamental rights.

Accordingly, we consider whether there is any rational basis justifying a prospective application of the law. Clearly, there is. As stated previously (see pt. III.B.4.b, *ante*), a rational voter could have concluded that a prospective application of the law would serve the legitimate goal of judicial economy by avoiding the invalidation of proceedings already conducted in Adult Court for those juvenile defendants against whom the People legally and properly directly filed accusatory pleadings in Adult Court prior to the effective date of Proposition 57. (See *Cervantes*, *supra*, 9 Cal.App.5th at p. 570 [rejecting equal protection challenge to Proposition 57 "because a prospective procedural change in the law that treats defendants differently depending upon when their crimes were committed does not violate equal protection"]; cf. *Mendoza*, *supra*, 10 Cal.App.5th at pp. 351–352 [rejecting equal protection challenge to Proposition 57 and stating, "The voters could rationally conclude that applying Proposition 57 prospectively would serve the legitimate purpose of not overwhelming the juvenile courts with requests for fitness hearings by those who had already been convicted in adult court for crimes committed as juveniles"].)[35]

Accordingly, we conclude that refusing to apply Proposition 57 to Walker's case does not constitute a denial of equal protection of the law.

---

[35] The *Lara* court did not reach the equal protection question in light of its resolution of the petition on other grounds. (See *Lara*, *supra*, 9 Cal.App.5th at p. 778.)

IV.

CONCLUSION

This court is not hostile to the policy changes effectuated by Proposition 57. However, as laudatory as the motivation behind the enactment of Proposition 57 may be, we conclude that the changes in the law that it enacted may not lawfully be applied to Walker's case given the lack of any discernable intent on the part of the electorate to apply Proposition 57 to require transfer hearings in the Juvenile Court for those minors against whom charges were properly filed in Adult Court prior to the effective date of the proposition.

V.

DISPOSITION

Let a writ of mandate issue directing the trial court to (1) vacate its December 12, 2016 order granting Walker's motion to transfer the case to Juvenile Court and (2) to conduct further proceedings in a manner consistent with this opinion. The stay issued on December 22, 2016 is vacated.

AARON, J.

I CONCUR:

O'ROURKE, J.

I CONCUR IN THE RESULT:

NARES, Acting P. J.

51